VAUGHN *v*. STATE OF INDIANA.

[No. 27,068. Filed February 20, 1939.]

*Clarence L. Martin,* and *Charles H. Foley,* for appellant.

*Omer S. Jackson,* Attorney General, and *Glen L. Steckley,* Deputy Attorney General, for the State.

FANSLER, J.—The appellant was convicted of a robbery of raw furs and escape by automobile. (Acts 1929, ch. 54, §3, p. 136, section 10-4710 Burns' Ann. St. 1933, section 2573 Baldwin's Ind. St. 1934.)

He assigns as error the overruling of his motion for a new trial.

A witness pointed out the defendant, who was sitting in the court room, as one of the persons who partici-

pated in the robbery. The State then exhibited to the witness a piece of cardboard, measuring about 8 x 9 inches, upon which was a printed form on which was typed a prison record of the defendant, and on the back of which were finger and thumb prints. On this card was pasted a photographic print 3 x 4½ inches, showing a front and profile photograph of the defendant, with a number across the breast of the front-view photograph. A brown paper was fastened around the card so as to entirely envelop it, except for an aperture through which the photographs showed. A strip of white paper was pasted over the number appearing upon the breast in the front-view photograph. The witness was asked if he could tell the jury "what that is," to which he answered "Yes." He was then asked: "Are you able to tell what that is from what you saw and observed on the night of December 27, 1936?" (The date of the alleged crime.) He answered "Yes." "You may tell the jury what that is." He answered: "Picture of Robert Vaughn." The picture and card covered with the brown paper was then admitted in evidence and was passed to the jury for examination. Appellant calls attention to the fact that the paper was not fastened around the aperture through which the photograph was shown, and that by slightly lifting the paper at the edge it is disclosed that the card has printed on it in capital letters "Indiana State Bureau of Criminal Identification and Investigation," and that at the right of the pictures is a description of the person photographed and a crime record.

The witness had already positively identified the defendant. In his testimony concerning the photographs he did no more than identify the photographs. It is true he was asked whether he was able to tell from what he saw on the night of the crime that the picture was a photograph of the defendant,

but necessarily he could only identify the defendant himself because of what he observed on the night of the crime, and, having identified the defendant positively, nothing was added to the identification by the identification of a photograph of the defendant. There is no contention that the defendant had changed in appearance between the date of the crime charged and the date of trial, nor is it contended that it was not obvious, without the testimony of any person, that the photograph was the picture of the defendant. There may be cases where a defendant's appearance has changed, in which a witness may be permitted to identify a photograph as a basis for other witnesses testifying that the defendant, though changed in appearance, is the identical person represented by the photograph; and there may be other cases in which a photograph may have some substantial probative force, but even in such a case the court should require the removal of anything of a prejudicial character from the photograph. Pictures of criminals showing a front and profile view, with a number displayed on the breast, are common and familiar. If the evidence had been offered for the good-faith purpose of showing that the witness could identify a photograph of the defendant, these pictures might have been cut apart and that portion where the number is displayed cut away. But it is obvious that thus presented they would have no more relevancy or probative force than a kodak picture taken in the court room or in the defendant's home. It may well be doubted whether the jurors remained in ignorance of the fact that the photographs and card had to do with some criminal record of the defendant. It was not proper to prove that the defendant had a criminal record, and what may not be done directly may not be done by indirection or subterfuge. If the photographs had any substantial probative force and

furnished any further evidence of the identity of the person who committed the crime than was furnished by the testimony of the witness who identified him, and it was impossible to separate the photographs from the prejudicial matter, a different question would be presented. Since proof of another crime improperly admitted is always treated as prejudicial error, and, since it cannot be said that this exhibit and the manner in which it was presented was not sufficient to cause a juror of average intelligence to at least strongly suspect that the defendant had a criminal history, we cannot say that the admission of the exhibit was not prejudicial.

Before the trial the defendant served the prosecuting attorney with a notice that he intended to offer an alibi in defense, and evidence, that on the 27th day of December, 1936, the date upon which the crime was charged to have been committed, he was at his home in Indianapolis, and that he required that the prosecuting attorney serve upon him a specific statement in regard to the exact date when, and place where, the prosecution proposed to prove the crime to have been committed, as provided for by chapter 228 of the Acts of 1935 (Acts 1935, p. 1198). The prosecutor notified the defendant that he proposed to prove that the crime was committed between the hours of 6:30 and 8:00 oclock P. M. on December 27, 1936, at the home of William M. Parks, about six miles northeast of Martinsville. The date was the one fixed in the affidavit, and there was no second notice as provided for in the statute. Upon the trial, the defendant offered the testimony of his wife, his mother, and others, that he was in his home during the entire day in question, with the exception of a short time at about 7:00 or 7:15 o'clock in the evening. The defense then called a physician, who testified that he went to the defendant's home about 7:45 o'clock

that evening to treat the defendant's infant child, who was ill and whom he had treated before; that the defendant was there at the time and remained there until the doctor left. There was an offer to prove by the doctor that the defendant came for him at his home between 7:00 and 7:30 o'clock that evening, and that he returned with him to the defendant's home; and also an offer to prove by two other witnesses that they saw the defendant at the home of the doctor between 7:00 and 8:00 o'clock on that evening. This evidence was excluded upon the theory, it appears, that, under the notice, the defendant might only prove that he was in his home during the time in question, and that the offered evidence was for the purpose of proving that he was elsewhere. The witnesses for the State fixed the hour of the commission of the crime as between 6:00 and 7:00 o'clock. The prosecutor's notice fixed the time as between 6:30 and 8:00 o'clock.

Under the notice given, the defendant was entitled to prove that he was in his home between 6:00 and 7:00 o'clock, the time when his mother and wife testified he was there, and the statute does not restrict him to direct testimony upon this question. He had the right to produce any evidence of any type that would tend to establish that fact. Evidence that he was seen at the doctor's office at 7:30 o'clock, and that he went there for the purpose of bringing the doctor to his home, and that he did bring him, in connection with the evidence that the baby's illness required the doctor at that time, furnishes a basis for a reasonable inference that if he had not been in his home just before appearing at the doctor's residence he would not have known of the necessity for calling the doctor for the baby. The defendant was charged in the indictment with having committed the crime at a point six miles from Martinsville, and, under the notice

from the prosecuting attorney, the State was limited in proving that the crime was committed between 6:30 and 8:00 o'clock, and still it was permitted to introduce evidence that the defendant was in certain places on the following day. This evidence was competent for the reason that it had a tendency to prove that he was at the place of the crime at the time the crime was committed. If a resident of Chicago is charged with the commission of a crime in a small village in southern Indiana, the State would be permitted to prove that he purchased a railroad ticket in Chicago the day before the date of the crime, since it would tend to support the allegation that he was at the place of the crime at the time it was charged to have been committed. No reason is seen why any other or different rule should control the character of evidence admissible to prove that the defendant was at another place at a given time. The sole test must be whether the evidence offered tends to prove the fact sought to be established. The evidence was erroneously excluded.

At the request of the State, the court gave the following instruction: "If you find from the evidence beyond a reasonable doubt that William M. Parks was robbed of the property described in the affidavit and if you further find beyond a reasonable doubt that the property described in the affidavit or any portion of it was found in the *exclusive* possession of the defendant after the robbery was committed, such possession imposes upon the defendant the duty and burden of explaining his possession of said property, and if the defendant fails to satisfactorily account as to how he came by said property, or if in attempting to explain his possession of said property he gives a false account of how he came into possession of said property, the law raises a presumption of fact that the defendant was guilty of the crime of robbery, and this

presumption may be strong enough to justify you in finding him guilty of the crime as charged in the affidavit." This instruction is in all substantial respects the same as the instruction condemned as erroneous and prejudicial in *Dedrick* v. *State* (1936), 210 Ind. 259, 2 N. E. (2d) 409. Possession of stolen goods may be evidence of guilt, but the law raises no presumption of guilt upon the proof of any evidentiary fact. It is the exclusive province of the jury to indulge in a presumption of guilt. It is beyond the province of the court to weigh and appraise the value of evidentiary facts, or to advise the jury whether such facts are sufficient to establish any of the ultimate facts in issue.

Judgment reversed, with instructions to sustain the appellant's motion for a new trial.

Roll, J., absent.