BLUE *v.* STATE OF INDIANA.

[No. 31,069. Filed April 9, 1968.]

*Bernard M. Tetek, Gerald N. Svetanoff,* and *Tetek & Svetanoff,* of counsel, of Gary, for appellants.

*John J. Dillon,* Attorney General, and *Murray West,* Deputy Attorney General, for appellee.

LEWIS, C. J.—This is an appeal from the convictions of the appellants, by separate jury verdicts, of the crime of Robbery.

Subsequent to the trial, appellant Martinez sought unsuccessfully to have a pauper appeal counsel appointed. Appellant Martinez then filed a petition in this Court for a Writ compelling the Lake County Criminal Court to appoint him such counsel. On August 5, 1966, this Court ordered the Lake County Court to prepare a transcript of the lower court proceedings and appoint counsel in order that appellant Martinez might perfect his appeal. (*State of Indiana, ex rel. Joe Martinez* v. *E. J. Wiltrout, as Special Judge, Lake County Criminal Court* [August 5, 1966]). Whereupon, appellant Martinez's appeal was consolidated with that of appellant Blue's.

The affidavit charged that on November 23, 1960, the appellants robbed a grocery store in Gary, Indiana. The manager and a cashier both positively identified the appellants as the parties who had robbed them. The identifications were made from police "mug shots"; in a police line-up; and finally at the trial by pointing out the appellants.

On appeal, the appellants raise four (4) assigned errors, the first of which is as follows:

That the Trial Court erred in permitting the State to introduce "mug shots" of appellants into evidence at the trial.

The photographs in question were the typical police pictures depicting the subject in three (3) classic poses: a full-length standing view, a sitting close-up facial view, and a sitting side-profile view. In the photographs, the subjects were wearing signs which had inscribed on them: Gary Indiana Police Department, the subject's number, and the date the photograph was taken. State's exhibit number 1, the photograph depicting appellant Blue, was taken on December 10, 1960, at the time of his arrest for the felony now at issue. State's exhibit number 2, depicting appellant Martinez, however, was taken on April 6, 1958, in connection with a prior arrest. These photographs were introduced into evidence, over objection, during the testimony of a Gary, Indiana, policeman. He testified that the store manager and cashier had identified the appellants from these photographs.

> "It is well established that photographs of persons, things, and places, when duly verified and shown by extrinsic evidence to be faithful representations of the subjects as of the time in question, are admissible in evidence, both in civil and criminal cases, as aids to the jury in arriving at an understanding of the evidence, . . ." 29 Am. Jur. 2d, Evidence, § 785, p. 856.

However, this is not to say that photographs are always admissible; but to the contrary, they are subject to the same exclusionary rules of evidence as are other items sought to be introduced. The pictures must be relevant to the issues at trial and may not be unduly prejudicial.

As to State's exhibit number 2, the law is well settled that the criminal record of a defendant may not be introduced into evidence at trial unless the defendant takes the stand or otherwise places his character in issue. *Wells* v. *State* (1959), 239 Ind. 415, 158 N. E. 2d 256. Appellant Martinez, in the case at bar, did not take the stand. Therefore, evidence tending to establish his criminal record is irrelevant and prejudicial.

In *United States* v. *Harman* (1965), 349 F. 2d 316, a federal agent introduced "mug shots" into evidence under the following circumstances. The appellant was on trial for operating an illegal distillery. An agent of the Federal Alcohol and Tobacco Tax Division had been assigned to investigate the appellant's activities prior to his arrest for this offense. In the agent's assignment file there was a "mug shot" that had been taken during appellant's previous stay in a Federal Penitentiary which the agent was to use for purposes of identification during the investigation. The agent ultimately discovered where the still was being operated and descended upon it with two other agents in a raid. He caught only a fleeting glimpse of the appellant before he escaped, yet at trial he identified him positively. The agent stated that he had seen the appellant on three occasions prior to the raid.

This "mug shot" was introduced at trial over strenuous objection and the jurors were allowed to examine it as well as to carry it into the jurors' deliberation room. This "mug shot" was of the usual type with the classic three (3) poses. At the bottom was printed, "USPA 74040 11-5-53"

Also, it is important that in Harman's trial, he did not take the stand or otherwise put his character in issue. Therefore, evidence of Harman's criminal record was not admissible.

Under these circumstances the United States Court of Appeals, Fourth Circuit, found the introduction of this "mug shot" into evidence was reversible error, and made the following statements:

> "Of course, there are many instances where pictures of persons, places and things are clearly admissible in evidence, and sometimes quite helpful. However, this is not one of those instances. Since Harman did not testify or put his character in issue, of course, any evidence of a previous conviction would have been inadmissible. . . ."
>
> ". . . It would seem that the inscription on one of the pictures shows that it was taken at the United States Prison at Atlanta, gives the prisoner's number and the date on which the picture was taken. It is doubtful that the inscrip-

tion on the picture conveyed all this information to the jury. However, the conclusion seems inescapable that the pictures, taken together with Bodine's testimony, must have conveyed to the jury the information that Harman had been previously convicted and had served a prison sentence." *United States* v. *Harman, supra.*

Another Federal decision on this point is *Barnes* v. *United States* (1966), 365 F. 2d 509. It involved a prosecution for housebreaking, grand larceny and simple assault. In this case a "mug shot" was allowed into evidence over objection. It was a "typical 'mug shot' from a police department 'rogues gallery' " with three poses and prison numbers, etc. written at the bottom of them. However, when shown to the jury, a wide strip of adhesive tape covered the writing on the bottom. The Judge explained to the jury that the tape covered irrelevant material and he would not allow the jury to take the photo into the jury room for fear that the tape might be removed. This Court said that the introduction of these "mug shots" into evidence constituted reversible error, and in particular, said:

"It is well-settled law that the criminal record of a defendant may not be introduced into evidence at trial unless the defendant takes the stand or otherwise places his character in issue. A photograph which on its face reveals the existence of such a criminal record is likewise inadmissible when the defendant's character has not been placed in issue."

The Court further stated:

". . . The double-shot picture, with front and profile shots alongside each other, is so familiar, from 'wanted' posters in the post office, motion pictures and television, that the inference that the person involved has a criminal record, or has at least been in trouble with the police, is natural, perhaps automatic. . . ."

*Barnes* v. *United States, supra,* goes on to quote from *Vaughn* v. *State* (1939), 215 Ind. 142, 19 N. E. 2d 239, wherein the appellant was on trial for a robbery of raw furs and

escape by automobile. At the trial, the appellant was positively identified by a witness as one of the persons who participated in the robbery. The State then produced a large piece of cardboard on which were mounted a typed prison record of the defendant, thumb prints, and a "mug shot". A brown paper was fastened around the card so as to entirely envelop it except for an aperture through which the photograph showed. A strip of white paper was pasted over the number appearing on the photo. Essentially, what remained was a photograph depicting the three classic poses. This High Court overruled the conviction because the admission of this "mug shot" was highly prejudicial to the defendant, and stated:

> ". . . Pictures of criminals showing a front and profile view, with a number displayed on the breast, are common and familiar. If the evidence had been offered for the good-faith purpose of showing that the witness could identify a photograph of the defendant, these pictures might have been cut apart and that portion where the number is displayed cut away. But it is obvious that thus presented they would have no more relevancy or probative force than a kodak picture taken in the court room or in the defendant's home. It may well be doubted whether the jurors remained in ignorance of the fact that the photographs and card [on which the photograph were pasted] had to do with some criminal record of the defendant. It was not proper to prove that the defendant had a criminal record, and what may not be done directly may not be done by indirection or subterfuge. . . ."

> ". . . Since proof of another crime improperly admitted is always treated as prejudicial error, and, since it cannot be said that this exhibit and the manner in which it was presented was not sufficient to cause a juror of average intelligence to at least strongly suspect that the defendant had a criminal history, we cannot say that the admission of the exhibit was not prejudicial."

It was very clearly prejudicial error to introduce the "mug shot" of appellant Martinez since it was taken in connection with a prior arrest thereby putting his criminal record at issue. There can be no doubt, after a study of the cases cited, that no other result may be reached.

However, as to appellant Blue, the photograph was taken incidental to his arrest for the crime charged in the case at bar. A careful investigation of the cases dealing with the question of the introduction of "mug shots" into evidence shows abundantly clear, that *when* the photos were taken is not material. Indeed, in *Barnes* v. *United States, supra,* and in *Vaughn* v. *State, supra,* the printing on the pictures was covered with tape or paper rendering it difficult for the jury to know when or where the photos were taken. What remained and what was objected to was a photograph which depicts an individual in the three classic poses. It is hardly an unreasonable assumption to make, that the jurors would know that these photos were taken incidental to an arrest or prison term and would not make the minute distinction as to *when* they were taken. They could readily assume that the subject depicted had a criminal record. These photographs are highly prejudicial upon sight and may very easily create an unfavorable automatic reaction in a juror's mind without further investigation by him.

It should also be noted that where the witness positively identifies the defendant in the Court room as the felon, "mug shots" introduced as evidence going to identification are irrelevant, and of no probative value, as well as an encumbrance on the record. *Vaughn* v. *State, supra.*

In conclusion we can see no reason why the rationale of the cases studied should not be extended to the "mug shot" of appellant Blue, and its introduction constitutes reversible error as well.

In view of the foregoing it will be necessary that this case be re-tried and we, therefore, will not make a determination of the other claimed errors of the appellants.

Judgment is reversed with instructions to the Trial Court to grant the appellants' motion for a new trial.

Arterburn, Hunter, Jackson and Mote, concur.

NOTE.—Reported in 235 N. E. 2d 471.