ROBERT TERRY SAFFOLD *v.* STATE OF INDIANA.

[No. 3-174A12. Filed October 22, 1974.]

*Paul J. Giorgi, Nicholas J. Schiralli,* of Merrillville, for appellant.

*Theodore L. Sendak,* Attorney General, *Gary M. Crist,* Deputy Attorney General, for appellee.

HOFFMAN, C.J.—Defendant-appellant Robert Terry Saffold (Saffold) and Larry Eugene Bass were charged by affidavit with the crime of robbery. Saffold was tried separately by a jury and found guilty as charged. He was sentenced to the Indiana State Prison for a period of not less than ten years nor more than twenty-five years. Thereafter, the trial court permitted Saffold to file a belated motion to correct errors. The motion was overruled and this appeal followed.

The facts in the record before us most favorable to the State show that shortly after midnight of August 27, 1970, Ronald Max Sobczak (Sobczak) was at work at a Clark Service Station in Hammond, Indiana, as a "pump attendant." While Sobczak was on duty, two men posing as customers drew pistols, threatened to "blow your [Sobczak's] head off", and ordered him into the back room of the station where they robbed him of money and cigarettes. Sobczak testified that one of the men who robbed him was "well-built", approximately six feet tall, weighed 190 pounds and was about 22 or 23 years of age. He further described this man as having large sideburns, a barely discernible mustache and gray hair around his temples;

and further stated that of the two persons who robbed him, Saffold was "the big one, he was the one with the cutoff shirt, the orangish-red dark shirt with the large arms, the one who had the white pistol." Sobczak identified the defendant, Robert Terry Saffold, as this man. However, Sobczak testified that defendant's appearance had changed at the time of trial in that he had no gray hair then and had lost weight.

An off-duty employee of the station, Gary Keith Bales (Bales) arrived at the station while Sobczak and the robbers were in the rear room of the station. He had parked his car on the station drive and was walking toward the door of the station when he saw Saffold emerge holding a coin changer and several cartons of cigarettes. Saffold saw Bales and ran from the station area.

Hammond police officers Jim Lawson and Stanley A. Burczyk were on routine mobile patrol when they passed the Clark Service Station and saw Saffold running from the station carrying cartons of cigarettes and a gray box. They gave chase, and Saffold was apprehended shortly thereafter with the weapon used in the robbery and items taken in the robbery in his possession. Both officers testified that Saffold's appearance at trial was different than on the night of the robbery.

After his arrest, Saffold was taken to the Hammond Police Station and "booked." Detective Sgt. William Sebastyen identified the defendant in court as the same man he interviewed on the morning following the robbery. He also stated that the defendant's appearance had changed at the time of trial. During the routine booking procedure following his arrest Saffold was photographed with a sign suspended about his neck reading :

> "Police Dept
> Hammond Ind
> 10307
> 8-26-70"

At trial, this photograph was introduced in evidence and examined by the jury after Detective Sgt. Sebastyen had identified it as the photograph of Saffold taken following his arrest on the morning of the robbery. The photograph is a single, frontal pose showing Saffold from middle chest to head. Beneath the photograph is the defendant's name, "Robert Saffold."

The sole question presented by this appeal is whether the admission of this photograph in evidence over the defendant's objection constituted error.

It is the general rule that "mug shots" of a criminal defendant are inadmissible at his trial where the defendant has not testified or otherwise placed his character in issue. It has been held that the introduction of such photographs in evidence under these circumstances would likely indicate to the jury that the defendant had previously been convicted of one or more crimes at a time when any direct evidence of such convictions would be inadmissible. The primary Indiana case law authorities for this proposition are: *Blue* v. *State* (1968), 250 Ind. 249, 235 N.E.2d 471; *Vaughn* v. *State* (1939), 215 Ind. 142, 19 N.E.2d 239.

In *Blue* our Supreme Court considered a situation where "mug shots" of the two defendants in the three classic, post-office-type poses were introduced in evidence at their joint trial. The signs worn by the defendants in those pictures showed the date they were taken, and thus it was apparent that the photograph of one defendant had been taken in connection with a prior arrest and, of the other, following his arrest for the crime being tried. In holding the latter photographs inadmissible under the above stated rule, the court relied heavily upon decisions of the Federal Courts, and concluded:

"However, as to appellant Blue, the photograph was taken incidental to his arrest for the crime charged in the case at bar. A careful investigation of the cases dealing with the question of the introduction of 'mug shots' into

evidence shows abundantly clear [sic] that *when* the photos were taken is not material. Indeed, in *Barnes* v. *United States, supra,* [(1966), 365 F. 2d 509] and in *Vaughn* v. *State, supra,* the printing on the pictures was covered with tape or paper rendering it difficult for the jury to know when or where the photos were taken. What remained and what was objected to was a photograph which depicts an individual in the three classic poses. It is hardly an unreasonable assumption to make, that the jurors would know that these photos were taken incidental to an arrest or prison term and would not make the minute distinction as to *when* they were taken. They could readily assume that the subject depicted had a criminal record. These photographs are highly prejudicial upon sight and may very easily create an unfavorable automatic reaction in a juror's mind without further investigation by him.

"It should also be noted that where the witness positively identifies the defendant in the Court room as the felon, 'mug shots' introduced as evidence going to identification are irrelevant, and of no probative value, as well as an encumbrance on the record. *Vaughn* v. *State, supra.*

"In conclusion we can see no reason why the rationale of the cases studied should not be extended to the 'mug shot' of appellant Blue, and its introduction constitutes reversible error as well."

The factual situation in the case at bar is superficially similar to that discussed in the above quote from *Blue.* However, upon careful consideration it is apparent that substantial factual differences from *Blue* are present in the instant case.

At the outset, it should be noted that in the case at bar the introduction of the single photograph was necessary to explain an apparent inconsistency in the testimony of the State's witnesses which was vigorously probed by the defendant on cross-examination. Each witness described a subject materially different in appearance from the defendant in the courtroom, and the defense made much of this identity question on cross-examination. Therefore, near the close of its case-in-chief, the State used the only means at its disposal, the photograph, to prove to the jury that the defendant had appeared at the time of his arrest as the witnesses described him at the time of trial.

The exact situation presented in the case at bar was foreseen by our Supreme Court in *Vaughn* v. *State, supra.* In *Vaughn* the court explained the circumstances in which such photographs would be admissible and, at 145-146 of 215 Ind., at 241 of 19 N.E.2d, stated:

> *"There is no contention that the defendant had changed in appearance between the date of the crime charged and the date of trial,* nor is it contended that it was not obvious, without the testimony of any person, that the photograph was the picture of the defendant. *There may be cases where a defendant's appearance has changed, in which a witness may be permitted to identify a photograph as a basis for other witnesses testifying that the defendant, though changed in appearance, is the identical person represented by the photograph;* and there may be other cases in which a photograph may have some substantial probative force, but even in such a case the court should require the removal of anything of a prejudicial character from the photograph. Pictures of criminals showing a front and profile view, with a number displayed on the breast, are common and familiar. * * * It may well be doubted whether the jurors remained in ignorance of the fact that the photographs and card had to do with some criminal record of the defendant. It was not proper to prove that the defendant had a criminal record, and what may not be done directly may not be done by indirection or subterfuge. *If the photographs had any substantial probative force and furnished any further evidence of the identity of the person who committed the crime than was furnished by the testimony of the witness who identified him, and it was impossible to separate the photographs from the prejudicial matter, a different question would be presented.* Since proof of another crime improperly admitted is always treated as prejudicial error, and, since it cannot be said that this exhibit and the manner in which it was presented was not sufficient to cause a juror of average intelligence to at least strongly suspect that the defendant had a criminal history, we cannot say that the admission of the exhibit was not prejudicial." (Emphasis supplied.)

In the case at bar, the single photograph was the only means available to prove beyond doubt that the defendant was the

same individual described by the witnesses. Thus, the photograph had substantial probative value beyond the evidence presented by the witnesses. Indeed, our Supreme Court has recently recognized that such photographs may be admissible in certain circumstances. *Ringham* v. *State* (1974), 261 Ind. 628, 308 N.E.2d 863.

Also, it must be remembered that the defense necessitated this final proof of identification when it repeatedly attacked the in-court identifications of the defendant made by the State's witnesses. These attacks put in issue the defendant's appearance at the time of his arrest and the photograph was introduced only for the purpose of showing that appearance.

Furthermore, unlike *Blue* and *Vaughn,* wherein the court indicated that the juries were left to speculate as to the source of such photographs, in the instant case the testimony prior to the introduction of the photograph of the defendant dispelled all doubts that the picture could have resulted from a prior conviction or arrest. Detective Sgt. Sebastyen testified that he had photographed Saffold following the arrest. When Sebastyen was asked to identify the photograph upon its introduction in evidence, he stated, "This is a picture of Robert Saffold taken the morning after the alleged robbery." When this testimony is coupled with the fact that the photograph itself displayed a date which tended to corroborate Sebastyen's statement, it is unquestionable that the jury did not conclude from the introduction of the photograph that Saffold had a prior record.

However, under the language quoted above from *Vaughn* v. *State, supra,* the facts that such a photograph has independent probative value and that its time of origin is fully explained will not alone establish that its admission in evidence over the defendant's objection is proper. Surely it cannot aid a defendant's cause to have the jury view him in a "mug shot" type of photograph with a sign about his neck. For this reason, *Vaughn* states that any prejudicial matter must be separated from such photographs prior to their ad-

mission in evidence, if possible. In *Vaughn* the court was referring to a prison record card to which the photographs were attached, but in the interests of fairness it is clearly desirable to also remove such items as the signs worn in these pictures, if possible.

However, in the case at bar, the removal of the prejudicial matter (the sign over the defendant's breast) would have substantially impaired the probative value of the photograph. The points of identification stated by the witnesses which could be compared to the photograph were 1) gray hair about the temples; 2) a thin mustache; 3) a particular old shirt with no sleeves; and 4) the large size of the defendant's arms and chest. Because the top of the sign falls only slightly below the defendant's chin in the picture, the removal of the portion below that point would have eliminated the latter two points of identification. And, if only the sign itself were cut from the picture, suspicion and speculation by the jury would have been intensified rather than quelled. Therefore, because the State attempted to minimize the prejudice to the defendant herein by introducing only a single photograph rather than a classic two or three pose "mug shot", and because it was impossible to remove the prejudicial matter from the photograph without substantially impairing its probative value, this tertiary test for admissibility required by *Vaughn* must be said to be satisfied in the case at bar. Therefore, the trial court did not commit reversible error in admitting the photograph.

The ultimate holding of admissibility herein is opposite from the ultimate holdings in *Vaughn* and *Blue*. However, there is no departure from the rationale of those decisions herein. *Vaughn* cited no authority for its conclusion as to this matter, while *Blue* relied upon *Vaughn* and upon the Federal decisions in *United States* v. *Harman* (4th Cir. 1965), 349 F. 2d 316, and *Barnes* v. *United States* (1966), 124 U.S. App.D.C. 318, 365 F. 2d 509,

In *United States* v. *Harman, supra,* the United States Court of Appeals for the Fourth Circuit ruled that the introduction in evidence of "mug shot"-type photographs of the defendant taken while he was in prison was prejudicial error, when coupled with testimony from which the jury could infer that the photographs resulted from a prior conviction. However, the court recognized that in some cases the admission of an *arrest* photograph was proper where any notion of criminality resulting therefrom was dispelled.

*Barnes* v. *United States, supra,* was distinguished and "police file photographs" ruled admissible under circumstances similar to the case at bar in *United States* v. *Calarco* (2d Cir. 1970), 424 F. 2d 657 (Cert. denied, 400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 53). The United States Court of Appeals for the Second Circuit explained its holding in *Calarco* in the recent case of *United States* v. *Harrington* (2d Cir. 1973), 490 F. 2d 487, at 491-492, as follows:

> "In *Calarco,* where a criminal conspiracy was charged, certain 'file photographs' of the defendant conspirators were introduced by the prosecutor for the purpose of proving that the defendants knew each other. Before being shown to the jury these 'file photographs' had been 'doctored' by having the written material on the back of the pictures covered over, and by carefully excising the incriminating numbers which appeared on the front. We upheld the introduction of the photographs under the circumstances of the case. This result was reached because we felt that the jury may well have inferred, if their suspicions were aroused at all, that these were photographs taken at the time the defendants were arrested on the charges for which they were then being tried and were not indicative of earlier contacts with the law. Judge Anderson did not allude to any incidents occurring during the introduction of the pictures into evidence that might have aroused the jury's suspicions regarding the source or nature of the photographs. We said that these photographs were not introduced to buttress and improperly color identification testimony, and we distinguished on this basis Barnes v. United States, *supra,* the case upon which appellant places his primary reliance."

Also, other Federal Circuit Courts of Appeals have held such photographs admissible under similar circumstances since *Blue* v. *State, supra* (1968), 250 Ind. 249, 235 N.E.2d 471, was decided. See: *Anthony* v. *United States* (9th Cir. 1970), 433 F. 2d 952; *United States* v. *Plante* (1st Cir. 1973), 472 F. 2d 829 (Cert. denied, 411 U.S. 950, 93 S.Ct. 1932, 36 L.Ed.2d 411.) See also: *Dirring* v. *United States* (1st Cir. 1964), 328 F. 2d 512 (Cert. denied, 377 U.S. 1003, 84 S.Ct. 1939, 12 L.E.2d 1052). Cf: *United States* v. *Scott* (7th Cir. 1974), 494 F. 2d 298.

Based upon the foregoing, it cannot be said that the introduction in evidence of the photograph of the defendant herein constituted reversible error. Furthermore, even if it were concluded that the introduction of this photograph in evidence resulted in a supposition by the jury that the defendant had been previously convicted of a crime, in view of the overwhelming evidence herein of the defendant's guilt we would not hesitate to hold that beyond a reasonable doubt the error did not contribute to the verdict of the jury. *Moore* v. *State* (1972), 258 Ind. 200, 280 N.E.2d 57.

For the reasons stated above, the judgment of conviction appealed from is affirmed.

Garrard, J., concurs; Staton, J., concurs in result.

NOTE.—Reported at 317 N.E.2d 814.