Tom FOX, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 2–1176A433.

Court of Appeals of Indiana, Fourth District.

Jan. 31, 1980.

Harriette Bailey Conn, Public Defender, Susan K. Carpenter, Deputy Public Defender, Indianapolis, for defendant-appellant.

Theo. L. Sendak, Atty. Gen., Wesley T. Wilson, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

CHIPMAN, Judge.

Defendant Thomas Fox was convicted by a jury of two counts of Aggravated Assault and Battery.[1] On appeal, Fox raises the following issues for our review:

1. whether there was sufficient evidence to support the convictions, and

2. whether the trial court erred in denying defendant's motion for a mistrial and motion to strike certain evidence pertaining to police "mug files."

Reversed.

The facts most favorable to the State show Fox created a bar-room disturbance shortly after midnight on September 7, 1973. The bar was crowded when Fox began to harass a patron. Lois Sullivan, a waitress, ordered Fox to "sit down and shut up." When Fox began to yell and scream, the bartender on duty approached him in an effort to quiet things down. Fox then began throwing bottles, glasses and ashtrays. Ms. Sullivan was standing next to Fox, facing in the opposite direction, when she was hit in the back of the head. The injury apparently occurred as Fox drew back his arm in an effort to throw one of the objects he had picked up. Another patron, Raymond Garven, was struck in the face by flying glass, and required some thirty-five stitches to close his wounds.

## I. SUFFICIENCY OF THE EVIDENCE

Fox argues the convictions are not supported by sufficient evidence in that nei-ther victim identified him as the perpetrator of the injurious acts. It is true that neither Ms. Sullivan nor Mr. Garven could identify Fox as the individual who threw the objects which struck them. However, several other eyewitnesses testified defendant was the only person throwing objects in the bar at the time the victims suffered their injuries. Though no testimony links Fox to the infliction of injury by means of a particular object, the inference that Fox threw the objects which struck Sullivan and Garven is inescapable. The issue of identity was a question of fact for the jury's resolution, *Norris v. State*, (1968) 251 Ind. 155, 240 N.E.2d 45, 242 N.E.2d 359, cert. den. 395 U.S. 905, 89 S.Ct. 1743, 23 L.Ed.2d 218 (1969), and the evidence supports the inference that Fox was the person who inflicted the injuries upon Sullivan and Garven.

Fox next argues the striking of Ms. Sullivan was "inadvertent" and therefore the requisite intent to sustain the conviction is lacking. Similarly, Fox contends the lack of any evidence connecting him to the particular object which injured Mr. Garven precludes the inference that he intended to inflict injury.

*Ind.Code* 35–13–3–1 provides:

Whoever intentionally or knowingly and unlawfully inflicts great bodily harm or disfigurement upon another person is guilty of aggravated assault and battery

. . . ..

Our Supreme Court has held the disjunctive language of the statute, i. e., "intentionally or knowingly and unlawfully," permits a conviction upon proof of a general mens rea. *Defries v. State*, (1976) 264 Ind. 233, 342 N.E.2d 622. The requisite mental state may be proven by evidence of willful, intentional conduct, whose tendency to injure is known, accompanied by such a wanton and reckless disregard of the probable harmful consequences to others as to imply the infliction of a willful, intentional injury. The bar was very crowded at the time Fox began hurling glass objects around the

---

**1.** *Ind.Code* 35–13–3–1 [since repealed].

room. The defendant undoubtedly knew or should have known that his conduct had a tendency to injure those in close proximity. His conduct reflects a reckless disregard for the probable harmful consequences of his actions and permits the inference of a general mens rea sufficient to support his convictions.

Finally, Fox argues the injuries sustained by Ms. Sullivan are "minor or moderate" and therefore do not constitute "great bodily harm" within the meaning of IC 35–13–3–1. We disagree.

■ Ms. Sullivan testified that as a result of her injuries she was hospitalized six days and was off work five weeks, suffering blurred vision, vomiting, and severe headaches. Dr. Fred E. Dunbar testified Ms. Sullivan suffered from a concussion and cervical strain with muscle spasms. Ms. Sullivan stated her vision problems and headaches were still present at the time the case went to trial, some fifteen months after the bar-room incident. This evidence is sufficient to support a finding of great bodily harm. *See generally Barbee v. State,* (1977) Ind., 369 N.E.2d 1072.

## II. MOTION FOR MISTRIAL

■ Following the State's unsuccessful attempt to have Mr. Garven identify Fox as his assailant, the prosecution called Officer Ron Mowery to the stand in an apparent attempt to show Garven had previously identified Fox from police photographs. During direct examination, Mowery was asked:

Q. And what did you do if anything while he [Garven] was at the police station? And I will ask you, of course, not to recite anything that was said, which would be hearsay. Just what in effect was done.

A. Uh, we asked him to look through our mug files.

Q. Okay. Did he in fact do that?

A. He did.

Q. Is that in fact the mug file that he looked through?

A. It is.

Q. All right. Do you know which photograph he identified?

A. I do.

The defense then objected to the entire line of questioning, arguing 1) the question called for hearsay, and 2) any reference to police "mug files" was an evidentiary harpoon which improperly brought the defendant's prior criminal record to the attention of the jury. Defendant requested the testimony of Mowery be stricken from the record and moved for a mistrial. The trial court denied the defendant's motion for a mistrial, but sustained the defendant's hearsay objection and refused to permit Mowery to testify further as to the photographic identification. On appeal, Fox argues the lower court erred by refusing to declare a mistrial or strike the improper testimony and admonish the jury. We find the trial court committed reversible error by refusing to strike the improper evidence and admonish the jury.

The indiscreet use of or reference to police "mug files" has been discouraged by our courts for over four decades. The rationale is plain: improper use of these police photographs may be sufficient to cause a juror of average intelligence to strongly suspect the defendant has a criminal record. In *Vaughn v. State,* (1939) 215 Ind. 142, 19 N.E.2d 239, the prosecution introduced into evidence front and profile photographs of the accused which were pasted on a card. Brown paper was fastened around the card in an attempt to cover printed material which disclosed the photographs were the property of the Indiana Bureau of Criminal Identification and Investigation. Our Supreme Court held the introduction of these "mug shots" constituted reversible error:

It was not proper to prove that the defendant had a criminal record, and what may not be done directly may not be done by indirection or subterfuge. . . . Since proof of another crime improperly admitted is always treated as prejudicial error, and, since it cannot be said that this exhibit and the manner in which it was presented was not sufficient to cause a juror of average intelligence to at least

strongly suspect that the defendant had a criminal history, we cannot say that the admission of the exhibit was not prejudicial.

19 N.E.2d at 241. The court in *Vaughn* emphasized the fact that the photographs had little independent probative value since the witness who made the photo identification had already positively identified the defendant at trial. The court also noted that if an identification issue had arisen, and if the evidence had been offered for the good faith purpose of showing the witness could identify a photograph of a defendant, the pictures could have been cut apart so as to minimize their prejudicial effect.

In *Blue v. State,* (1968) 250 Ind. 249, 235 N.E.2d 471, the Supreme Court reversed another conviction in which the prosecution had introduced photographs of the defendant. The photographs in question were typical police pictures depicting the subject in the three classic poses: a full-length standing view, a sitting close-up facial view, and a sitting side-profile view. Citing *Vaughn,* the court held photographs which depict a defendant in the "three classic poses" "are highly prejudicial upon sight and may very easily create an unfavorable automatic reaction in a juror's mind . .." 235 N.E.2d at 474. The court again emphasized the mug shots lacked any independent probative value in that there had already been a positive in-court identification of the defendants.

Drawing from the language of *Vaughn, supra,* and *Blue, supra,* our courts have more recently held police mug shots may be admissible if the pictures have independent probative value *and* the prosecution has made every effort to minimize the prejudicial effect of the photographs. *Gray v. State,* (1978) Ind., 374 N.E.2d 518; *Anderson v. State,* (1977) Ind.App., 360 N.E.2d 1266.

In the present case, no police photographs of the defendant were actually introduced into evidence. Because of the defendant's timely objection, the trial court did not permit the police officer to testify as to which photograph the victim identified from police "mug files." However, the jury knew well that Mr. Garven, the victim, had problems identifying defendant Fox as his assailant. In fact, Garven had identified a juror as the perpetrator of the crime. When the prosecutor called Officer Mowery to the stand and asked which photograph Garven had identified from police "mug files," the jury most certainly anticipated a photographic identification of defendant Fox to be forthcoming. It requires no great leap of logic to conclude that if police mug shots may be highly prejudicial when introduced into evidence and shown to a jury, a reference to police "mug files" or "mug shots" by the prosecution is improper and may be, in certain instances, just as prejudicial. *See Bayer v. State,* (1973) 158 Ind.App. 531, 303 N.E.2d 678 (testimony by police officer as to presence of picture of defendant in police "mug file" held improper, but constituted harmless error under the circumstances).

The State's use and reference to the police mug file in this case was reckless and inexcusable. While a photographic identification may well have had independent probative value, it was highly improper for the prosecution to bring the entire picture file into the court room, place it before the witness, and then unhesitatingly refer to the file as a police "mug file." The trial court then erred when it denied defendant the curative effect of an admonishment by refusing to strike the State's improper reference to the mug file and Officer Mowery's related testimony.

Our Supreme Court has held that in order to justify a reversal in a case such as this, we must find the prosecutorial misconduct and related error placed the defendant in a position of grave peril to which he should not have been subjected, or that the prosecution attempted to deliberately prejudice the defendant. *Maldonado v. State,* (1976) 265 Ind. 492, 355 N.E.2d 843; *White v. State,* (1971) 257 Ind. 64, 272 N.E.2d 312. In *White,* Justice Prentice presented the following considerations to be used as a guide in determining whether a defendant has been placed in a position of grave peril:

1. The effect of constitutional provisions, statutes or rules relating to harmless error.

2. The degree of materiality of the testimony.

3. Other evidence of guilt.

4. Other evidence tending to prove the same fact.

5. Other evidence that may cure the improper testimony.

6. Possible waiver by the injured party.

7. Whether the statement was volunteered by the witness and whether there had been deliberate action on the part of the prosecution to present the matter to the jury.

8. The penalty assessed.

9. Whether or not the testimony, although volunteered by the witness, was in part brought out by action of the defendant or his counsel.

10. The existence of other errors.

11. Whether the question of guilt is close or clear and compelling.

12. The standing and experience of the person giving the objectionable testimony.

13. Whether or not the objectionable testimony or misconduct was repeated.

The facts of this case are unlike those in *Bayer v. State, supra,* where a police officer, in a non-responsive answer, volunteered the statement that a picture of the defendant was carried in a police "mug file." Applying the guidelines announced in *White, supra,* the court in *Bayer* noted there was no deliberate action on the part of the prosecution to bring out the words "mug files" and the state made no attempt whatsoever to refer to or reintroduce the objectionable phrase. The court also stated:

Perhaps as important to our decision as the absence of a deliberate attempt to prejudice is the fact that the "door way" was first opened by the defense. The defense on cross examination established that the police officers carried Bayer's picture in a group with several others and showed them to victims of armed robberies. When this file was eventually and inadvertently referred to as a "mug file", it was not a startling revelation of a new and material fact.

303 N.E.2d at 684. Similarly, in *Angel v. State,* (1973) 155 Ind.App. 242, 292 N.E.2d 268, the court held the mere *inadvertent* mention of the term "mug shots" by a *lay witness* who apparently had no experience in police work could not be said to have placed the defendant's character in evidence and therefore was not prejudicial to the defendant. In the present case, however, the prosecution made specific reference to a mug file which was actually brought into the court room and placed before the witness, a police officer. The prosecutor then asked Officer Mowery, "is that in fact the mug file he [Garven] looked through?" and "do you know which photograph he identified?" We are not dealing here with an inadvertent, unresponsive answer; both the prosecutor and the police officer used the objectionable phrase. Furthermore, the defendant in no way triggered the need for this photographic identification and cannot be said to have "opened the door" to this error.

Finally, we note that while the evidence presented in this case was sufficient to support the defendant's convictions, it cannot be considered overwhelming. Particularly significant is the fact that defendant Fox raised the issue of self defense at trial. Fox took the stand in an effort to establish he acted in self defense by throwing objects at a bartender who he claimed assaulted him with a broken pool cue. The bartender on duty denied the existence of any such pool cue; however, another bartender employed at the tavern testified for the defendant and stated a broken pool cue, referred to as the "providence persuader," was kept behind the bar.

Applying the guidelines announced in *White, supra,* to the facts before us, we are unable to dismiss the possibility that the prosecutorial misconduct in this case had a substantial influence on the jury in arriving at its verdict. Therefore, we hold the defendant was placed in a position of grave

peril to which he should not have been subjected.

Accordingly, the judgment is reversed and a new trial ordered.

MILLER, P. J., and YOUNG, J., concur.