**Nathaniel McHENRY,
Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 3–879A218.**

Court of Appeals of Indiana,
Third District.

March 24, 1980.

Rehearing Denied April 28, 1980.
See 403 N.E.2d 893.

David Capp, Cohen & Thiros, Merrillville, for defendant-appellant.

Theo. L. Sendak, Atty. Gen., Cindy A. Ellis, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

STATON, Judge.

Nathaniel McHenry was charged and convicted by jury of the crime of Burglary, a class B felony.[1] He was sentenced to the Indiana Department of Correction for a period of 10 years.

On appeal, McHenry raises basically four issues for our consideration:

(1) Did the trial court err in permitting the alternate juror to retire with the jury for its deliberations without giving a limiting instruction as to the proper role of an alternate juror?

(2) Did it err in proceeding with the trial in the absence of the defendant?

(3) Did the court err in admitting into evidence a "mug shot" of McHenry?

(4) Did the trial court commit error when it admitted an in-court photographic identification of McHenry where the initial identification was allegedly impermissibly suggestive?

We affirm.

The facts relevant to our disposition of the case indicate that on October 20, 1977 Robert Johnson was sleeping when he heard the sound of breaking glass coming from the rear of his apartment. He got his rifle and confronted two men in his living room; they were in the process of stealing his stereo. When apprehended, the man closest to the door fled. McHenry, who was bent over the stereo, stood up. Johnson held McHenry at gunpoint for several minutes until he too made an escape attempt. As McHenry darted to the kitchen door, Johnson fired his rifle, striking him in the rear.

---

1. IC 1971, 35–43–2–1. "Burglary.—A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a class C felony. However, the offense is a class B felony if it is committed while armed with a deadly weapon or if the building or structure is a dwelling, . . . ."

Johnson immediately called the police, who alerted local hospitals to watch for persons with gunshot wounds. Within an hour, a man, seeking treatment for such wounds, was admitted. The hospital notified the police who then took Johnson to the hospital. There he made a positive identification of McHenry as the man who had broken into his home.

## I.

### Alternate Juror

■ McHenry charges that the trial court erred when it failed to give a limiting instruction concerning the proper role of an alternate juror. This is not the case. In Indiana, an alternate juror may, in the discretion of the trial court, be sent with the original twelve jurors to the jury room during deliberations as long as the court properly instructs him that he is not to participate in the deliberations unless it becomes necessary for him to replace one of the original twelve jurors. *Johnson v. State* (1977), Ind., 369 N.E.2d 623, *cert. den.* (1978), 436 U.S. 948, 98 S.Ct. 2855, 56 L.Ed.2d 791; *Minton v. State* (1978), Ind., 378 N.E.2d 639. Such an instruction was given in this case:

"BY THE COURT:

"If you elect to go to the jury room, I will admonish you that you are not to in any way participate in the jury deliberation in any manner whatsoever, do you understand that?

"BY ALTERNATE JUROR:

"Yes.

"BY THE COURT:

"I charge the entire panel, and particularly the foreperson that the alternate juror is not in any manner to participate or contribute to your deliberation. You all understand that?

"WHEREUPON THE JURORS NODDED IN AFFIRMATIVE."

It, therefore, was not error for the alternate juror to accompany the original twelve jurors when they entered upon their deliberations.

## II.

### Absent Defendant

McHenry next claims that his Sixth Amendment right to confront the witnesses against him was violated when the court conducted the trial in his absence.

On May 30, 1978 McHenry was present in the courtroom for the selection of the jury for his trial. McHenry, who had been freed on bond the prior weekend, was admonished by the court to appear the next morning for his trial. On May 31, 1978, a power failure at the Lake County Government Complex necessitated the postponing of the trial until the next day. On June 1, 1978, McHenry failed to appear. The court decided to conduct the trial in his absence.

■ In making his argument, McHenry recognizes that a defendant, by his conduct, may waive both his statutory and constitutional rights to be present at his own trial. *Brown v. State* (1979), Ind.App., 390 N.E.2d 1058. However, he argues that a failure to appear on time does not, in and of itself, constitute a waiver of the right to be present, citing *Taylor v. State* (1978), Ind. App., 383 N.E.2d 1068, 1071. Unfortunately, McHenry only selectively relies on this case; he omits the pertinent holding. The *Taylor* Court explained that a defendant's continued absence, when coupled with a failure to notify the court and provide it with an adequate explanation, does constitute such a waiver. *See also Brown, supra.*

McHenry was admonished several times by the court at the conclusion of voir dire examination on May 30, 1978. It said:

"BY THE COURT:

"Now, Mr. McHenry, you understand the matter will reconvene tomorrow morning at 10:00 a. m. If you are not back here tomorrow morning at 10:00 a. m.—I want to make it very clear that if you are not here, we will proceed to trial. If you are not here, we will issue a bench warrant, and we will proceed to trial without you. The reason I feel I ought to make that clear to you is that generally we don't have people making bond the weekend be-

fore the trial date. I want you to understand your obligation to be back here tomorrow morning at 10:00 a. m. Not later than 10:00. That is your obligation under the bond you posted with the Court. I am not suggesting that you did not intend to be here, but I wanted to make it clear on the record that you understand that the trial resumes tomorrow morning at 10:00 a. m. You do understand that?

"BY NATHANIEL McHENRY: Yes.

"BY THE COURT: And you will be here at that time?

"BY NATHANIEL McHENRY: Yes."

When the trial reconvened on June 1, 1978, McHenry was absent. His attorney explained that, despite his efforts to locate McHenry, he had neither seen nor heard from him since May 30, 1978. In addition, McHenry apparently made no effort to contact his attorney. Later, at sentencing, it became clear that McHenry had chosen this period of time to remove himself from the jurisdiction. We conclude that the trial court did not abuse its discretion in conducting the trial in his absence.

McHenry next claims that the court erred when it gave a preliminary admonishment to the jury, stating that the jury was not to infer anything from the defendant's absence. He urges us to find that such an admonishment was prejudicial. He, however, did not so object at the trial. By permitting the court to act in a claimed erroneous manner without a specific objection, McHenry may not now take advantage of the alleged error. *Kindred v. State* (1974), 160 Ind.App. 418, 312 N.E.2d 100.

McHenry also contends that the court erred in denying his motion for mistrial where the State, during closing arguments, made reference to his absence. These references, he urges, constituted misconduct and denied him a fair trial. Here, McHenry fails to point out that the court admonished the jury to disregard one such remark and then ordered it stricken from the record. It also sustained his objection to another such remark and stated, in a

final instruction, that the defendant was not required to prove his innocence or explain anything. Where it appears that the court has taken prompt and reasonable measures to prevent any injurious effects from improper remarks, the harm is presumed to have been cured. *Hoskins v. State* (1978), Ind., 375 N.E.2d 191.

## III.

### Mug Shot

McHenry next contends that the trial court erred in admitting his "mug shot" as it was prejudicial and raised the inference of prior criminal activity.

In Indiana, when a defendant does not take the stand or otherwise put his character in issue, "mug shots" are generally not admissible when they tend to imply or prove that the defendant has a criminal record. *Shindler v. State* (1975), 166 Ind. App. 258, 335 N.E.2d 638; *Blue v. State* (1968), 250 Ind. 249, 235 N.E.2d 471. In articulating this general rule, the Court in *Vaughn v. State* (1939), 215 Ind. 142, 19 N.E.2d 239, 241, noted that there are some circumstances in which such a photograph can be properly admissible. If the State can demonstrate that the photograph has some substantial evidential value independent of other evidence and that it is not unduly prejudicial, it may be admissible. *Shindler, supra; Saffold v. State* (1974), 162 Ind.App. 6, 317 N.E.2d 814. The admission of photographs is within the sound discretion of the trial court and its decision may be reversed only upon a showing of an abuse of discretion. *Rogers v. State* (1979), Ind., 383 N.E.2d 1035.

Despite warnings by the court and his attorney's attempts to locate him, McHenry did not appear for his trial. As a result, the court was faced with a problem. Even though the victim had positively identified McHenry, there was no way to prove, beyond a reasonable doubt, that he was the same individual as described by the victim. The court decided, in this situation that the probative value of using the photograph outweighed the prejudice to McHenry. Before making its decision, however, it was

careful to determine that the date on the photograph indicated that it was taken after McHenry's arrest for this charge.

 We acknowledge the validity of McHenry's assertions that, generally, "mug shots" are inadmissible. However, in this situation, we do not feel that the trial court abused its discretion in admitting such a photograph. McHenry chose not to appear at his trial; he fled the jurisdiction. His absence forced the court to utilize the only means available to prove, beyond a reasonable doubt, that McHenry was the same individual as described by the victim. The photograph, therefore, had substantial probative value beyond the evidence presented by the victim. We will not allow McHenry to leave the jurisdiction and then complain about this procedure, utilized by the court, in his absence. In so holding, we note that our conclusion is limited to this very unusual set of circumstances.

McHenry also claims that the court committed error when it allowed the "mug shot" to go into the jury room. He relies upon *Anderson v. State* (1977), Ind.App., 360 N.E.2d 1266 in which the court found that this practice constituted an abuse of discretion. In *Anderson, supra,* the two defendants were present in the courtroom and were identified by the State's witness on direct examination. There the Court said, "[I]t is difficult to imagine how the jury could have been assisted by having Anderson's and Seaman's mug shots in their possession during their deliberations." *Anderson, supra,* at 1267. In the case at bar, McHenry failed to appear at his trial. His photograph, admittedly a "mug shot," was the only means whereby the jury could link the victim's description with him. In this limited circumstance, the taking of this mug shot to the jury room was an aid to the jury in the proper consideration of this case. *See Anderson, supra,* for a discussion of § 5.1 of the Standards Relating to Trial by Jury.

## IV.

### Identification

Finally, McHenry argues that the victim's in-court identification of his photograph was tainted by the unduly suggestive identification of the defendant at the hospital. We disagree.

 The primary question here is whether the pre-trial identification procedure was unnecessarily suggestive. *Hall v. State* (1978), Ind., 378 N.E.2d 823. A one-man show-up is not necessarily to be condemned. *Dewey v. State* (1976), 264 Ind. 403, 345 N.E.2d 842. The suggestiveness of an identification procedure is to be determined by an evaluation of the totality of the circumstances. *Dewey, supra.*

The record indicates that the identification occurred at the hospital approximately one hour after the commission of the crime. The police, who took Johnson to the hospital told him only that a person, who had been shot in the rear, had been admitted. Additionally, the testimony of the victim revealed that he had a basis for his in-court identification, independent of the hospital show-up. *Swope v. State* (1975), 263 Ind. 148, 325 N.E.2d 193. The victim explained that he had observed McHenry, face-to-face in good lighting, while holding him at gunpoint for at least two minutes. In addition, he had talked with McHenry. He testified, "Sure, I recognized his voice because I had heard it three times in my apartment."

 We conclude that this one-on-one show-up was not unduly suggestive. Furthermore, there was an independent basis for the victim's in-court identification. Accordingly, we affirm the judgment of the trial court.

Affirmed.

GARRARD, P. J., and HOFFMAN, J., concur.