IVAN COX *v.* STATE OF INDIANA.

[No. 1-275A33. Filed December 9, 1975.]

*Michael C. Williams,* of Winchester, for appellant.

*Theodore L. Sendak,* Attorney General, *Lawrence B. O'Connell,* Deputy Attorney General, for appellee.

LOWDERMILK, J.—This is an action by the State of Indiana brought by information against the defendant-appellant Ivan Cox (Cox) for entering the business house owned by Glen Morton with intent to commit a felony therein,[1] in that Ivan Cox intended to unlawfully and feloniously take, steal and carry away certain goods, chattels and property of Glen Morton.

Cox was tried by the court without the intervention of a jury, found guilty as charged and after pre-sentence investigation was committed to the custody of the Indiana Department of Corrections for an indeterminate period of not less than one nor more than five years.

Cox timely filed his motion to correct errors which sets forth two specifications, namely, (1) the decision of the court

---

1.  Entering to commit a felony, Burns Sec. 10-704, IC 1971 35-13-4-5.

is contrary to law and (2) the decision of the court is not supported by sufficient evidence upon all the necessary elements of the crime.

Cox has grouped the two legal questions raised by the two specifications of error under one argument as provided by Indiana Rules of Procedure, Appellate Rule 8.3(A)(7), and we shall so treat them in this opinion.

The facts most favorable to the State of Indiana are as follows:

On January 21, 1974, Eric Passmore was driving his automobile with his girl friend, Sue Engle, and Delbert Bowers and Cox as passengers from Winchester to Lynn, Indiana. Bowers told Passmore to go to the laundramat in Lynn, as he wanted to get some money. Passmore knew Bowers was going to break into a pop machine as he knew that Bowers had done so before.

There is evidence that a tape recorder was blasting out of rear end speakers and that Bowers had to lean up and tell Passmore what he wanted and that none of the other passengers could hear what was said and had no knowledge of why Passmore stopped at the laundramat. Cox testified he did not hear anything because of the noise from the tape player.

The laundramat owned by Glen Morton sets on the same lot as Morton's residence and can be viewed therefrom. Mrs. Trudy Morton, Glen's wife, operates the laundramat and she saw on that date at about 5:30 P.M. a car containing suspicious looking characters drive up and brake beside the laundramat. She recognized Sue Engle, who lived in Lynn, as an occupant who got out of the car.

Trudy Morton immediately went to the laundramat where she entered the front door into one long room with a dry cleaning room off to the right and a coke room located immediately beyond the dry cleaning room. There was a large window between the coke room and the dry cleaning room from which you can see from the dry cleaning room into the

coke room without the persons in the coke room being capable of observing you in the dry cleaning room. It is not a one way mirror, but has a register effect over it as a security window.

Mrs. Morton, after entering the building, went into the dry cleaning room where she could not be seen and could observe through the window between it and the coke room and saw a "long haired, red headed guy" standing next to the machine and "the other guy was into the machine getting the coke box where the money is out of the machine." The door on the coke box had been opened so that the other person had room to have his hands in the same. The coke machine is locked so it is necessary to have a key to open it without forcing the lock. The coke box was locked before the four people above mentioned entered the building and although Mrs. Morton did not see the box unlocked or forced open, it was open as above stated.

Mrs. Morton testified that while looking through the security window she recognized a person who she later learned was Ivan Cox (defendant-appellant herein). She said he was back in the coke room at the time she was looking through the security window and was the one who had his hand in the box where the money was and had the box part way out.

In order to stop this theft Mrs. Morton had to leave the dry cleaning room to go around to another door to the coke room and when she arrived in the coke room she saw the "long haired, red headed guy and that guy" (Cox) walk away from the machine and saw a boy at the door who said "Here she comes." She did not know this look-out boy and would be unable to recognize him if she saw him. Sue Engle was still in the laundramat at this time.

Mrs. Morton backed Bowers and Cox against the wall and told them to give themselves up and the "red headed guy" disclaimed any action with the coke machine and Cox said to her that she couldn't prove it.

In the meantime these persons were edging toward the door to the laundry room and Mrs. Morton stopped in the door to block it and told a lady in the laundramat to call her husband or the police, at which time Cox broke loose from Mrs. Morton and knocked her out of the way. In his attempt to get out of the laundramat he was blocked by a customer who he threatened to hit and she permitted him to leave the building.

The original four passengers got into the car and left. Mrs. Morton secured the license number and the car was owned by Passmore.

Sue Engle testified when she went in the back room, which was the coke room, that Delbert Bowers and Ivan Cox were there and she did not know if Eric Passmore was there. She was asked the following questions to which she gave the following answers:

"Q. What was Delbert and Ivan doing in the back room?
A. Trying to get the pop machine open.

Q. Did either one of them say anything to you?
A. No.

Q. Didn't say anything to you at all?
A. When I was back there, they wanted me to open it, but I didn't.
\* \* \*
Q. How did you know what they were going to do?
A. Because they kind of talked about it when they was in there.
\* \* \*
Q. Were you ever asked to be a look-out?
A. Yes.

Q. While they were breaking into this coin-coke machine?
A. Yes.

Q. Who asked you?
A. It was Ivan or Delbert.

Q. You don't recall which one?"

(The court asked the witness what her answer was, to which she answered "It was Ivan or Delbert" and that she did not recall which one.)

"Q. Did anyone ask Eric if he would be a look-out?

A. I think so.

Q. Do you recall who asked him?
(No audible answer.)

Q. Did you in fact go out to look out to see if anyone was coming? Where was Eric?

A. I think he was in the back of the back room standing by one of the dryers or whatever you call them."

Ivan Cox, on cross examination, was asked the following questions to which he gave the following answers:

"* * *

"Q. Delbert and you and Eric were in the back room? Sue was out front?

A. Yes.

Q. Where was Delbert?

A. He was opening the pop machine.

Q. Where were you?

A. I was between him and Eric.

Q. How far away from Delbert were you?

A. About 3 or 4 feet.

Q. Where was Eric?

A. He was over by the door.

Q. He was standing look-out?

A. Yeh.

Q. Did you hear Delbert ask Eric to stand look-out?

A. Yes, sir."

The evidence is further that Delbert Bowers opened the coke box with a small pocket knife and nail clip and had opened it before with the same or similar tools.

When Mrs. Morton came into the coke room the door of the box was standing slightly ajar, although Bowers or Cox had shoved it to as Mrs. Morton entered the room and it would not stay closed unless locked.

Mrs. Morton made an in-court identification of Cox as the young man who had had his hand in the box where the money was and he was the one whom she had seen through the window between the laundramat and the coke room.

Appellant Cox charges the evidence does not show that Cox had the required intent at the time he entered the laundramat to commit a felony, as the State failed to prove the defendant (1) entered (2) with the intent to commit a felony therein, and the entry and intent must coincide.

It is further urgently contended that the evidence fails to show that Cox ever obtained or exerted unauthorized control over property belonging to another and that being present is in and of itself not sufficient to prove the guilt of Cox.

Cox further contends that his flight from the scene is not evidence of guilt.

## DECISION

In the case of *Farno* v. *State* (1974), 159 Ind. App. 627, 308 N.E.2d 724, this court, in the Second Division, was confronted with the same question we have here, which was that the State was bound to prove as an essential element of the crime of entering to commit a felony the *specific intention of the defendant to commit a felony at the time he entered.* It was held that "intent" is a mental state of the actor and therefore the trier of fact must resort to reasonable inferences based upon examination of the surrounding circumstances to reasonably infer its existence.

The court stated:

". . . Because such 'intent' is a mental state of the actor, the trier of fact must resort to reasonable inferences based upon examination of the surrounding circumstances to reasonably infer its existence. . . . (Cases cited omitted.)

"If the circumstantial evidence bearing upon this element could reasonably lead to either of two inferences, one of guilt and one of innocence, an appellate tribunal is not free to reweigh the evidence and determine which should have predominated in the mind of the trier of fact. . . . (Cases cited omitted.)" See also, *Christian* v. *State* (1975), 163

Ind. App. 237, 323 N.E.2d 253, 254; *DeFries* v. *State* (1974), 162 Ind. App. 531, 319 N.E.2d 837, 840; *Majors* v. *State* (1974), 160 Ind. App. 124, 310 N.E.2d 283, 285.

Judge Buchanan, in speaking further in *Farno, supra,* stated that our function is a limited one:

> " 'Where the sufficiency of circumstantial evidence is in question, we examine it carefully, not for the purpose of finding whether or not it is adequate to overcome every reasonable hypothesis of innocence, but with the view of deciding *whether an inference may be reasonably drawn therefrom tending to support the finding of the trial court.'* (Emphasis supplied) . . ."

> \* \* \*

> "Indiana courts have often recognized that felonious intent at the time of entry may be inferred from the fact that a criminal act is committed by the accused *after* the entry. . . . (Cases cited omitted.)" (Original emphasis.)

In the case at bar it is readily seen from the facts and evidence set out in this opinion there are reasonable inferences flowing from circumstantial evidence which supports the decision of the trial court. Neither Cox nor Bowers had any money. They and the other two occupants of the car entered the business house together where they kept one man for a look-out while another and appellant Cox broke into the coke machine and Cox was seen by Trudy Morton with his hand inside the open machine attempting to remove the cash box therefrom. Mrs. Morton then saw him replace it and the two men then attempted to close the box door and pretended innocence as Mrs. Morton entered the coke room and accosted and tried to arrest them. Such is sufficient to justify the inference that Cox entered with intent to commit theft.

Cox's flight from the coke room may be considered by the trier of facts in passing upon his guilt or innocence. In *Bradley* v. *State* (1972), 153 Ind. App. 421, 287 N.E.2d 759, the court said:

> "One example of circumstantial evidence is flight from the scene of a crime. While evidence of flight is competent

to show a consciousness of guilt, it is for the trier of fact to determine what weight and value should be placed upon such evidence. . . . (Cases cited omitted.) Furthermore, flight alone is insufficient to sustain a conviction; it must be combined with other evidence which establishes beyond a reasonable doubt that the defendant committed the crime *with which he is charged. . . .*" (Original emphasis.) 287 N.E.2d at 762.

In the case at bar the flight of Cox merely combined with other evidence which established beyond a reasonable doubt that Cox committed the crime with which he was charged.

We find that the evidence was sufficient to sustain the conviction and the judgment was not contrary to law.

Judgment affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE:—Reported at 338 N.E.2d 319.