**Percy BUSH, Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 1–1279A348.**

Court of Appeals of Indiana, First District.

March 31, 1980.

Rehearing Denied May 5, 1980.

for such a prosecutor or deputy to recuse himself from such prosecutions.

Dennis Brinkmeyer, Evansville, for defendant-appellant.

Theodore L. Sendak, Atty. Gen., Stephen J. Cuthbert, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Percy Bush was convicted of the offense of burglary, a class C felony,[1] and sentenced to a fixed term of six years. He appeals from said conviction. We affirm.

## STATEMENT OF THE FACTS

The facts as gleaned from the evidence most favorable to the State reveal that the Jesse Stock Insurance Company building in Evansville was protected by a Sonitrol alarm system. About 11:30 p. m. on March 24, 1979, the Sonitrol central office called one P. V. Smith, an employee of Stock, and in response to such call, Smith proceeded to the office of Stock. Evansville city police were also dispatched to that location. When Smith arrived, he noticed that a small window in the back door had been broken and that the lights were on in the office. Smith also testified that there were stains on the curtains in the employees' lunch room and lounge. Smith further identified as his chair a chair which apparently had been thrown through a large window in his office. Photographs of the chair, the broken window, and the stained drapes were admitted in evidence.

Officer Schnacke and Weaver proceeded to the scene pursuant to radio dispatch. The building and window were illuminated by floodlights outside the building. As they approached the Stock building Weaver observed a black male take the curtains, pull them back, and look directly at Weaver. Weaver observed that the black male was wearing a dark three-piece suit and a sock hat. Weaver further stated that he had a good look at the black man's face and that the person was Percy Bush. At the time of this identification the window was not broken. The officers left their car, went to the west side of the building, other officers arrived, and the officers heard glass break.

As Officer Weaver ran around the building and ran down the block, he saw a black male running between some houses toward an automobile parked under a carport at 420 South Kentucky Avenue and observed this man open the car door and slide into the front seat and lie down. Officer Schnacke also had seen a person run up the driveway and get into the car under the carport. Schnacke identified this person as Bush. Bush was apprehended by the officers as he was lying on the front seat of the car, which car was jacked up on a bumper jack. Bush was dressed in a dark three-piece suit but without a sock cap. A sock cap was found on the floor of the Stock office building. When he was apprehended by the police, there was a tear on Bush's right trouser leg just above the knee, and there were several slashes on the left sleeve and back of his jacket. When Officer Schnacke took Bush into custody, Schnacke observed a cut on Bush's left wrist and cuts on Bush's coat sleeve and pants leg. Bush was taken to the hospital where photographs were taken showing a cut on his leg above the knee and a cut or slash on his left coat sleeve. The photographs (State's Exhibits 9, 10, and 11) also show Bush wearing a three-piece suit.

The evidence further showed that the stain on the curtains was blood and that there was a blood stain on the back of the chair which apparently had been thrown through the large window.

Witness Smith testified that upon examination of the office he found nothing missing. However, Officer Schnacke testified that the office appeared to have been completely ransacked.

## ISSUES

1. Whether the court erred in admitting over objection State's Exhibits 9, 10, and 11 (the photographs of Bush taken at the hospital).

---

1. The offense of burglary is defined by statute (IC 35–43–2–1) as follows:

"A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a class C felony. However, the offense is a class B felony if it is committed while armed with a deadly weapon or if the building or structure is a dwelling, and a class A felony if it results in either bodily injury or serious bodily injury to any other person."

2. Whether the evidence was insufficient to support the verdict.

## DECISION

*Issue One*

Bush contends that it was prejudicial error for the trial court to admit the photographs taken of him while in custody, which photographs displayed the cut on his leg and the cut on his jacket sleeve (State's Exhibits 9, 10, and 11). Bush relies on *Blue v. State*, (1968) 250 Ind. 249, 235 N.E.2d 471, and *Vaughn v. State*, (1939) 215 Ind. 142, 19 N.E.2d 239,[2] contending that State's Exhibits 9, 10, and 11 were "mug shots," and thus inadmissible under the cases cited. We do not agree.

It is true that *Blue v. State, supra,* and *Vaughn v. State, supra,* held that the admission of "mug shots" of the defendant was improper. However, in this case, Bush's reliance on *Blue* and *Vaughn* is misplaced, because, in the first place, the photographs in question were not "mug shots." A careful reading of *Blue* and *Vaughn* discloses the true definition of a "mug shot" and the grounds of inadmissibility of such photographs. A "mug shot" as defined by those cases is the typical police photography exhibiting both front and profile views of the person with case numbers and police department identification thereon. In the *Blue* case, at 250 Ind. 251, at 235 N.E.2d at 472, the court said:

> "The photographs in question were the typical police pictures depicting the subject in three (3) classic poses: a full-length standing view, a sitting close-up facial view, and a sitting side-profile view. In the photographs, the subjects were wearing signs which had inscribed on them: Gary Indiana Police Department, the subject's number, and the date the photograph was taken. * * *"

The foregoing quoted portion of *Blue v. State, supra,* describes the type of police photograph which is generally denominated a "mug shot."

The reason given by the cases for denying admission into evidence of such "mug shots" is that the admission of photographs of the general type which are within the classification of "mug shots" would reveal to the jury that the defendant had a prior criminal record. *Blue v. State, supra,* at 250 Ind. 253, at 235 N.E.2d 473, quoted from *Barnes v. United States,* (1966) 124 U.S. App.D.C. 318, 365 F.2d 509, as follows:

> " * * * The double-shot picture, with front and profile shots alongside each other, is so familiar, from 'wanted' posters in the post office, motion pictures and television, that the inference that the person involved has a criminal record, or has at least been in trouble with the police, is natural, perhaps automatic. * * * "

The rule excluding such photographs was succinctly stated by Judge Lowdermilk in *Shindler v. State,* (1975) 166 Ind.App. 258, 275–76, 335 N.E.2d 638, 648:

> "Numerous cases in this State have established that, generally, when a defendant does not take the stand or otherwise place his character in issue, 'mug shots' are not properly admissible when they tend to prove or imply that the defendant has a criminal record." (Citations omitted.)

State's Exhibits 9, 10, and 11 are clearly not "mug shots" as that term is generally understood. These photographs were taken at a hospital and depict Bush lying on a cart in an examining room. There is nothing whatever about these photographs which in any manner would tend to convey an impression that Bush had a prior criminal record or had been in trouble with the police previously. It is true that a police officer appears in Exhibit 9, and that

---

2. Bush did not comply with Ind.Rules of Procedure, Appellate Rule 8.2(A)(1) as to citations in that he did not give the year of final disposition or the state report book and page citation, but only stated the title of the case and the regional reporter citation. Further the page citations given for *Blue v. State, supra,* and for *Thompson v. State,* (1979) Ind., 386 N.E.2d 682, also cited in his brief, were wrong. Such inattention to the court's rules and careless work should be avoided.

a close inspection of Exhibits 9 and 11 reveals that Bush is handcuffed. However, the testimony already had disclosed that Bush had been arrested and taken to the hospital in custody of the police. No prior criminal or arrest record is implied in the photographs or could be inferred from them. The evil of the "mug shot"—the connotation of prior criminal activity by the person portrayed—is not present here. Bush's "mug shot" objection to the admission of Exhibits 9, 10, and 11 is unavailing.

The exhibits were relevant. Evidence which has even a slight tendency to prove a material fact in issue is relevant. *Jones v. State*, (1979) Ind., 385 N.E.2d 426. In view of the evidence of blood stains on the curtains and on the chair in question, the jury could have inferred from the evidence of cuts on Bush, that the blood stains came from contact with him. Also, the jury could have inferred from the cuts and tears on Bush's clothing, as testified to and as shown in the photographs, that Bush cut or tore his clothing while departing the building through the broken window. Photographs generally are admissible as evidence of anything to which a witness might testify. *Merritt v. State*, (1978) Ind., 371 N.E.2d 382. Further, the admission of photographs is within the sound discretion of the court and will not be disturbed unless there is an abuse of discretion. *Rogers v. State*, (1979) Ind., 383 N.E.2d 1035. There was no abuse of discretion here, and there was no error in the admission of the photographs.

*Issue Two*

Bush next contends that the evidence is insufficient to support the conviction. He asserts in the "Summary of the Argument" section of his brief that the evidence is not sufficient to show that he broke and entered the premises, or that the requisite intent to commit theft[3] was established. In the "Argument" section of the brief, he argues only that the essential element of intent to commit theft had not been proved.

The motion to correct errors states simply that "[t]he evidence was insufficient to support the jury's verdict and the verdict was contrary to law as to the finding of guilty of burglary, a Class C Felony." Although Bush may not have preserved the questions raised in this issue in his motion to correct errors, nevertheless, we shall proceed to determine such issues.

When the issue of the sufficiency of the evidence to support a conviction is raised on appeal, this court will neither weigh the evidence nor determine the credibility of the witnesses. Rather, this court will consider only that evidence of probative value which is most favorable to the State, together with all reasonable inferences drawn therefrom, and if, from that evidence, together with all reasonable inferences drawn therefrom, a reasonable trier of fact could find the existence of each element of the crime beyond a reasonable doubt, the conviction will be upheld. *Perkins v. State*, (1979) Ind., 392 N.E.2d 490; *Thompson v. State*, (1979) Ind., 386 N.E.2d 682; *Henderson v. State*, (1976) 264 Ind. 334, 343 N.E.2d 776; *Conard v. State*, (1977) Ind.App., 369 N.E.2d 1090.

Bush argues that there is no evidence to support a finding that he broke and entered the Stock Insurance Company building. Such an argument cannot prevail in the face of evidence showing (1) the window glass in the back door was broken out; (2) at 11:30 p. m. approximately, Bush was observed inside the building looking out the window; (3) the glass window was broken apparently by a chair having been thrown through it; (4) Bush was observed running between buildings in close proximity to the insurance office toward the car in the carport on Kentucky Avenue; and (5) Bush was found lying on the front seat of said car. Further, there is evidence of bloodstains on the curtains and chair in the building, of cuts on Bush's person, of Bush's

---

3. The information charged Bush with breaking and entering the building in question with the intent to commit the felony of theft therein.

clothing having been torn or cut,[4] and of a sock cap similar to the one Bush was wearing when first observed by Officer Weaver having been found lying on the floor inside the building. In addition, witness Smith testified that no one had been given permission to enter the building after closing on the night in question.

 Bush further asserts that the evidence is insufficient to establish an intent to commit theft, as a requisite element of the burglary charge in this case, since nothing was taken from the building. However, a conviction for burglary does not require proof of theft; it requires proof only of an intent to commit a felony. *Raymer v. State*, (1978) Ind.App., 381 N.E.2d 109. Although Smith testified that nothing had been taken from the insurance office, Officer Schnacke testified that the office appeared completely ransacked. This evidence is sufficient to support a finding of intent to commit theft. This is especially true when coupled with the evidence of flight. Clearly, the jury could have inferred from the evidence that Bush broke into the building in question, that he intended to commit theft therein, and that upon the arrival of the police, he threw a chair through the window, escaped through the broken window, and ran between buildings to the parked car where he attempted

to hide. Flight from the scene of a crime may be considered as circumstantial evidence of guilt. *Coleman v. State*, (1976) 265 Ind. 357, 354 N.E.2d 232; *Cox v. State*, (1975) 167 Ind.App. 168, 338 N.E.2d 319; *Rodman v. State*, (1973) 155 Ind.App. 224, 292 N.E.2d 288. In *Rodman, supra*, in a statement applicable to the case at bar, Judge Robertson stated at 155 Ind.App. 225, at 292 N.E.2d 289:

> "Identification as having been seen in the vicinity of a burglary and fleeing upon being interrupted by the police is evidence of guilt." (Citation omitted.)

 The evidence in this case clearly passes the sufficiency test in that there is substantial evidence of probative value to support every material element of the offense charged beyond a reasonable doubt. The verdict will not be disturbed.

Judgment affirmed.

ROBERTSON, P. J., and NEAL, J., concur.

---

4. Bush testified in his own behalf. He attempted to explain the cuts on his person and clothing by stating that he got into an argument in a dice game and was cut by one of the other participants. The jury, obviously, chose not to believe this testimony. As previously stated, we neither weigh the evidence nor judge the credibility of witness, but look only to that evidence most favorable to the State in determining sufficiency of evidence issues.