THOMAS v. STATE OF INDIANA.

[No. 1267S142. Filed January 8, 1969.]

*Leonard V. Campanale,* of Mishawaka, for appellant.

*John J. Dillon,* Attorney General, and *Robert F. Hassett,* Deputy Attorney General, for appellee.

HUNTER, J.—The appellant was charged by affidavit with the offenses of robbery, Ind. Anno. Stat. § 10-4101 (1956 Repl.), and kidnapping, Ind. Anno. Stat. § 10-2901 (1956 Repl.), Count I of the affidavit charges:

> "That on or about the 17th day of August, 1966, at and in the County of St. Joseph, State of Indiana, JOHN FREDERICK THOMAS took from the person of Charles D. Green an article of value, to-wit: Sixty Dollars and 00/100 ($60.00) in good and lawful currency of the United States of America, by putting Charles D. Green in fear . . ."

Count II of the affidavit charges:

> "That on or about the 17th day of August, 1966, at and in the County of St. Joseph, State of Indiana, JOHN FREDERICK THOMAS did forcibly and fraudulently

carry off Charles D. Green from a place within this state, to-wit: at or near the Band City Oil Company station, located at 1300 East McKinley Highway, in the City of Mishawaka, County and State aforesaid, with the felonious intention then and there and thereby having said Charles D. Green carried away from said place, . . ."

On August 18, 1966, pursuant to this affidavit, the appellant was arrested by the Sheriff and brought before the St. Joseph Superior Court for arraignment. There he was informed of his rights, and he asked the court to appoint an attorney to represent him. The court appointed the public defender to represent the appellant, and the arraignment was continued until August 29th. On August 29, the public defender and his associate appeared with the appellant, waived further arraignment, and entered a plea of not guilty to both counts of the affidavit. On November 11, the associate public defender resigned from his employment, and all the cases on which he was then working were turned over to the one remaining public defender. On November 18, a trial was held, and the appellant was represented in court only by this public defender. Having been so advised by his counsel, the appellant waived his right to a jury trial. The state presented its case, and the public defender rested the defense without the submission of any evidence on behalf of the appellant. The appellant was convicted on both counts and sentenced to the Indiana State Prison for the rest of his natural life.

The appellant pro se filed a motion for a new trial claiming that he had been inadequately represented by the public defender. The relevant part of this motion reads as follows:

"John Thomas, defendant in the above entitled cause, respectfully petitions the Court for a new trial of said cause for the following reasons: . . .

3. Inadequate representation by defense counsel in that counsel failed to properly investigate the case and properly prepare defendant's defense for trial. Counsel spoke to defendant only three (3) times prior to trial. The first time was on November 10, 1966, when counsel talked to

defendant for about ten minutes and asked defendant to plead guilty to robbery. On November 15, 1966, counsel conversed with defendant for a period of from twenty to twenty-five minutes, and talked about getting a bench trial. The third time counsel spoke to defendant on or about November 16 or 17, 1966, for a duration of about twenty minutes.

4. Misconduct on the part of defense counsel to the prejudice of defendant in that said counsel failed to interview or subpoena the following witnesses:

(a) William D. Jacobs, Michigan City, Indiana, who would have testified that defendant had nothing to do with the crimes for which he was convicted.

(b) Linda DeMeulenaere, South Bend, Indiana, who would have testified that defendant was talking with her on the telephone at the time when crimes occurred for which defendant was convicted."

The appellant then filed a pauper petition for the appointment of an attorney and for the expenses of this appeal; the petition was granted, and the court appointed Mr. Leonard V. Campanale to represent the appellant. On September 19, 1967, both the appellant and the state introduced new testimony at a hearing regarding the appellant's motion for a new trial. On October 5, the motion for a new trial was overruled; this is the only error assigned by the appellant in this appeal.

Article I, § 13 of the Indiana Constitution requires that pauper defendants in criminal proceedings be provided legal counsel at public expense. *Knox County Council* v. *State ex rel. McCormick* (1940), 217 Ind. 493, 29 N. E. 2d 405.

"The constitutional requirement is satified when the defendant has had the benefit of the advice and guidance of a reputable and competent attorney. If at any stage of the proceedings the appointed counsel is unable to continue, it is the duty of the trial court to appoint other reputable and competent counsel so that the defendant shall have the benefit of counsel at all stages . . ." *State ex rel. White* v. *Hilgemann* (1941), 218 Ind. 572, 578, 34 N. E. 2d 129.

This court has consistently held that the counsel so provided must be competent and be allowed adequate time in which to prepare a defense. *Wilson* v. *State* (1943), 222 Ind. 63, 51 N. E. 2d 848.

> "And mere perfunctory action by an attorney assuming to represent one accused of crime which falls short of presenting the evidence favorable to him and invoking the rules of law intended to prevent conviction for an offense of which the accused is innocent, or the imposition of a penalty more severe than is deserved, should not be tolerated." *Castro* v. *State* (1925), 196 Ind. 385, 391, 147 N. E. 321.

Inasmuch as it would be impossible for this court to fix guidelines as to what would be required to constitute adequate representation, each case must be allowed to stand on its own facts. *Shack* v. *State* (1967), 249 Ind. 67, 231 N. E. 2d 36. In order then to determine whether trial counsel's defense of the case met the constitutional standards, it is necessary to review the evidence adduced at the trial and at the hearing on the motion for a new trial.

At the trial, the subject of the robbery testified that the appellant was a passenger in the car driven by one William Dale Jacobs when the robbery and kidnapping took place and that the appellant had held a shotgun on him during that time. The witness admitted that the only time he had a chance to see the men inside the automobile was when he first came out of the building and was walking around the front of the car to the left side to talk to the driver.

"Q. Did you go to the right side of the automobile?

A. No, I went to the left side of the automobile.

Q. You went to the left side of the automobile. As you went to the left side of the automobile were the headlights of the car on or off?

A. Off.

Q. They were off. In what direction were you looking as you came around the front of the car?

A. Looking inside to see who the customers were, to see if I possibly knew them from some place.

Q. Do you always do that: look in the front seat of the car?

A. I always do.

Q. When anyone comes in?

A. I always do. I presume I always will. I don't know.

Q. How long did you look at the man who was a passenger in the car?

A. Until he passed out of sight. I mean until I was close enough to the car where I could no longer see the man sitting on the right side.

Q. How many feet were you from the passenger side of the car would you say?

A. Oh, ten.

Q. Would you describe the description that you gave to the police of the man who was the passenger in the car?

A. Rather tall, dark wavy hair, and I believe I said he was wearing a T-shirt, I am not sure.

Q. What was he wearing?

A. A T-shirt.

Q. What else was he wearing.

A. I could not see below the waist.

Q. What color was the T-shirt?

A. White.

Q. Was there anything else that he was wearing?

A. He had a handkerchief around his neck which I did not notice it until he raised it to cover his face.

Q. So as you walked around the front of the car to get to the left side of the car to ask the driver what he wanted, which you normally do—

A. Yes.

Q. How long did you have the passenger in your vision?

A. Oh, I don't know.

Q. Ten seconds?

A. Somewhere around thirty, forty-five seconds I guess.

Q. During the thirty or forty-five seconds you kept your eyes right on him, is that correct?

A. I believe so.

Q. But you are not sure?

A. No, I can't definitely say so.

Q. Now as you came to the left side of the car what happened then?

A. I saw the shotgun pointed at me and the driver said: 'Let's have it.'

Q. As you looked into the car could you see their faces?

A. No.

Q. Why not?

A. I was standing up above the roof of the car, close enough to it not to be able to see all the way inside.

Q. Did they have anything over their faces?

A. As I said, they pulled the handkerchiefs over their faces. I assume that they were still there, I don't know.

Q. When did they do that?

A. Just as I reached the front of the car.

Q. Just as you reached the front of the car, is that correct?

A. That is why I said I only had thirty or forty-five seconds to view their faces. I had to view them before they pulled up the handkerchiefs.

Q. How much of the distance did you have to cover in that thirty to forty-five seconds.

A. Oh, twenty, twenty-five feet."

Although other witnesses were presented by the state to identify the car which was used to perpetrate the crimes or to establish that appellant was with William Dale Jacobs and Terry Gene Gardner when they were arrested, no evidence, other than the one victim's testimony, was introduced to show that the appellant was actually present when the crimes took place.

At the hearing on the motion for a new trial, William Dale Jacobs and Terry Gene Gardner, both inmates in

Indiana correctional institutions, testified that they had perpetrated the robbery and that the appellant had not been present when the actual robbery and abduction occurred. Appellant testified that, although he had associated with Jacobs and Gardner both before and after the crimes, he had not been present at the scene of the robbery. He further testified that he had requested the public defender to call Jacobs and himself to testify accordingly at his trial. According to the appellant, Linda DeMeulenaere, another person whom appellant asked the public defender call as a defense witness, would have testified that she was talking on the telephone to the appellant at the time these crimes occurred. The public defender agreed that the appellant had requested him to contact William Dale Jacobs for the purpose of having Jacobs testify at the trial, and he claimed that he had contacted Jacobs *the night before the trial* but that Jacobs, although he had already entered a plea of guilty to the robbery charge, stated that he was unwilling to "help" the appellant. (Jacobs, in his testimony, denied that he had ever been contacted by the public defender concerning testifying at the appellant's trial.) The trial counsel also admitted that, because of the resignation of his associate, he had been presented with about twice the normal case load at the time of the appellant's trial. Both the public defender and the appellant testified that, prior to the trial, they had only been together to discuss the case on three different occasions spending less than two and one-half hours total for all three meetings.

Even when every instance of conflicting testimony which arose at the hearing on the motion for new trial is resolved in favor of the state, it would appear that the public defender could have presented evidence to rebut the uncorroborated testimony of the state's chief witness to the effect that the appellant was present at the scene of the crime. It is undisputed that the appellant requested the public defender to call certain witnesses to present the

appellant's version of the events. Both the federal and state constitutions guarantee a defendant in a criminal proceeding a right to be heard and a method by which he can compel the attendance of witnesses in his behalf. The trial counsel, by declining to exercise these rights for the appellant, made it impossible for the trier of fact to hear the appellant's side of the story. This court, in viewing the uncorroborated testimony of the state's chief witness and the testimony which was adduced at the hearing on the motion for a new trial, cannot say as a matter of law that the result would have been the same had the appellant been permitted to present his version of the facts.

We wish to emphasize, however, that hindsight is not the test for determining the constitutional adequacy of the appellant's legal representation. *Hoy* v. *State* (1947), 225 Ind. 428, 75 N. E. 2d 915. If the public defender made a *reasonable* determination at the time of the trial that there was no evidence available or availing to the appellant, this court would not find inadequate representation simply because there existed evidence which might have benefitted the defense.

Our next consideration, therefore, must be whether the public defender's decision not to present evidence on behalf of the defendant was justified or reasonable. Any such *reasonable* belief could only have been predicated on a proper investigation of the alleged defense. Accepting the testimony most favorable to the state, the first contact ever made by the public defender with William Dale Jacobs regarding his testimony in behalf of the appellant was a telephone call *the night before the trial*. When given three months to prepare a defense, contacting what might have been the key defense witness the night before the trial cannot be considered to be a proper investigation of the appellant's version of the events. When compounded by the fact that there was less of the public defender's time spent in consultation with the appellant than there was in the trial itself, we hold

that the public defender's investigation of the appellant's side of the story was an insufficient basis on which to predicate a reasonable decision not to follow the wishes of his client. In the case at bar, the appellant requested that a defense be presented; to sustain the public defender's decision to rest without the submission of any evidence which might tend to establish such a defense, we hold only that he must conduct a proper investigation of the defense as a basis on which to predicate his decision. It is in the combination of the inadequacy of the investigation and the failure to present the requested defense that we can and must find inadequate representation. Since the investigation was not sufficient, we are constrained to hold that the defense was more "perfunctory" than actual.

A statement in the appellant's handwriting which had been given by the appellant to the public defender before the trial was introduced in evidence by the state. In this statement the appellant told his counsel that he had not been present at the scene of the crimes and that the only persons present had been Jacobs and Gardner. The appellant also admitted, however, that he had discussed the robbery with his two companions and that he was aware that they were planning on committing the crime. He further stated that, when they later picked him up in the automobile, the robbery victim was in the car and that he, the appellant, was present when Jacobs and Gardner forced the victim to disrobe and abandoned him on a county road. In his handwritten statement, he also admitted that he was present and shared in the division of the proceeds of the robbery. It should be remembered that this statement was originally given by the appellant to his attorney and would be a privileged communication in any proceeding other than one in which the appellant was questioning the adequacy of the representation afforded by this attorney. The state, relying on the admissions made in this privileged communication, argues that, even if the appellant's story had been presented and was

believed by the trial court, he still could have been found to have been an accessory before the fact under Ind. Anno. Stat. § 9-102 (1956 Repl.). But the answer to this contention is, firstly, that this communication is privileged and cannot be considered as evidence of the appellant's innocence or guilt, and, secondly, that it is not the function of this court to determine what the fact finder might have believed or concluded had the evidence which the appellant requested been presented at his trial. (*) Furthermore, even if the entire statement was accorded evidentiary value and was accepted as the most accurate account of the events which took place, it is doubtful that the appellant could be found to have been an accessory as regards the kidnapping charge. According to the statement, though the appellant discussed the robbery of the gas station with Jacobs and Gardner, they apparently had not contemplated kidnapping the attendant. Even the testimony of the victim indicates that the decision to kidnap him was spontaneous and was made while the robbery was being perpetrated. Again accepting the statement as an accurate account of events, the crime of kidnapping would have been consummated by the time the appellant rejoined his companions. Given this set of facts, the appellant could not have been found guilty of being an accessory before the fact under Ind. Anno. Stat. § 9-102 (1956 Repl.) on the kidnapping charge, as he would not have aided, abetted or encouraged the commission of this crime. Whether appellant's version of the facts as enunciated in his statement would make him an accessory after the fact is not in issue as he would have had to have been specifically charged with this offense in order to sustain a conviction under Ind. Anno. Stat. § 9-103 (1956 Repl.).

We wish to make it clear that we do not hold or intend to imply that the public defender was incompetent or acted

---

* In the hearing on the motion for a new trial, the appellant expressly denied some of the admissions made in his handwritten statement.

in an improper manner. Confronted with twice the normal case load, he may well have done all that he possibly had time to do for the appellant. If he did so, he properly performed the duties of his office. On the other hand, the appellant's rights can not be determined by the case load of the public defender. It is reversible error not to provide a defendant in a criminal prosecution with adequate legal representation at each stage of the proceeding, regardless of the circumstances which cause the public defender's office to become overloaded. If the public defender was too busy to adequately represent each of his clients, the court should have appointed other counsel to assist him in carrying out his responsibilities. *State ex rel. White* v. *Hilgemann, supra.*

For all the foregoing reasons the judgment of the trial court should be reversed, and the cause demanded with instructions to sustain appellant's motion for a new trial.

Judgment reversed.

Lewis, C. J., concurred in this opinion on Monday, December 30, 1968, which was prior to the expiration of his term on this court.

Arterburn, DeBruler, and Jackson, JJ., concur.

NOTE.—Reported in 242 N. E. 2d 919.