David E. WHITE and Robert D. Box, Appellants (Defendants below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 2–280A46.

Court of Appeals of Indiana, Second District.

Jan. 22, 1981.

SHIELDS, Judge.

Appellants David E. White and Robert D. Box appeal their convictions of robbery alleging they were denied effective assistance of trial counsel.[1]

We reverse.

Counsel is presumed to have prepared and executed his client's defense effectively. This presumption will be disturbed only upon strong and convincing proof that what counsel did or did not do made the proceedings a mockery of justice and shocks the conscience of the reviewing court. In resolving this issue the reviewing court will consider the totality of the circumstances surrounding counsel's pretrial preparation and the actual conduct of the trial. Reversible error will be found if counsel failed to provide the defendant with adequate legal representation. *Sotelo v. State*, (1980) Ind., 408 N.E.2d 1215; *Crisp v. State*, (1979) Ind., 394 N.E.2d 115; *Magley v. State*, (1975) 263 Ind. 618, 335 N.E.2d 811; *Thomas v. State*, (1969) 251 Ind. 546, 242 N.E.2d 919.

The evidence adduced at trial is as follows:

On August 14, 1978 shortly after 10 p. m., James C. Moore and Philip Dudley, employees of a United Oil service station, were walking to their cars after closing the station for the night. As they approached the cars, two men, both wearing disguises and one carrying a sawed-off shotgun, ran from behind the building and demanded money. Upon being unable to get any money, the disguised men took Moore's car which was later found abandoned nearby. Neither Moore nor Dudley were able to identify the two men who had committed the robbery.

However, appellants' ex-roommate, Kevin Welsh, testified appellants had bragged and boasted a day or two later about committing the robbery. His testimony as to what appellants had told him about the robbery corresponded with Moore and Dudley's version of it.

Frank E. Spencer, Indianapolis, for appellants.

Theodore L. Sendak, Atty. Gen., Linley E. Pearson, Atty. Gen. (as of 1/12/81), Jeff G. Fihn, Deputy Atty. Gen., Indianapolis, for appellee.

1. Appellate counsel was not trial counsel.

The evidence further revealed appellants and Welsh had rented a house together for about two months prior to August 14. About a month after the rental commenced Welsh learned appellants were planning to move to Florida and felt they were going to "hang" him with all the bills. On August 16 or 17 Welsh asked appellants to leave because he was "fed up" with paying the bills. For unexplained reasons Welsh did not report his knowledge of the robbery to the police until August 21.

Appellants testified they witnessed the robbery from the parking lot of the Paper Arts Company which is located across the street from the station. Appellants were sitting in White's car in the lot waiting for Chuck Bernett to take his lunch break. They followed Moore's car as it left the station but lost sight of it when it turned into a residential area. As appellants were leaving the area, they noticed a car parked in some bushes beside the road. While they told Welsh what they had seen, they did not tell the police because they did not want to get involved.

On rebuttal, Moore testified the Paper Arts Company did not have a night shift and there were no cars parked in its lot when the service station closed.

Upon this evidence, appellants were convicted of robbery.

The hearing held on appellants' motion to correct errors revealed trial counsel's ill health. At the time of trial, defense counsel was seventy years old. He had suffered a heart attack before the original trial date, causing a postponement of the trial. During the one-day trial, counsel was taking five different medications, some several times daily. Counsel was required to lie down in the judge's chamber to rest during the trial. Two or three days after the trial concluded counsel suffered a heart arrest.

Counsel, with commendable candor, stated he would be hard put to say he was in the best of shape on the day of trial and questioned his own judgments made during the trial.

2. Appellants concede that, except as his state of health impaired counsel's ability during this

■ From the record presented we must agree that counsel's ill health seriously impeded his ability to provide adequate legal representation.[2]

The hearing on the motion to correct errors revealed the following. First, counsel failed to call Chuck Bernett as a witness. Bernett, if called as a witness at the trial, would have testified he was to meet appellants on his lunch break at the Paper Arts Company and, further, that as he came out of the building he saw White's car leaving the parking lot. Prior to trial, appellants had informed counsel of Bernett and his probable testimony. However, counsel did not meet with Bernett until the morning of trial and was not quite sure what Bernett would testify to until he talked with him that morning. Bernett, although not subpoenaed, did appear the morning of trial, as he had verbally agreed, but informed counsel he had to leave for work in the afternoon. Appellants unsuccessfully urged counsel to call Bernett before he left which was prior to the close of the State's case. During the defense, counsel told the trial court he had a witness who had left and unsuccessfully attempted to summarize the expected testimony. Counsel did not ask the court for a recess or continuance in order to obtain Bernett's testimony.

The record further shows counsel was aware of evidence which could have cast serious doubt on the credibility of Kevin Welsh, the only witness who connected appellants with the crime. Counsel failed to present such evidence either through cross-examination of Welsh or other witnesses.

The impeaching evidence can be summarized briefly as follows: On August 18, Welsh and four other men confronted White and Jeffrey Miller as they were walking down the street. Welsh, according to Miller and White, stated he would put White behind bars and would burn the home of White's parents. Welsh further

trial, counsel was and is a competent attorney.

stated he would kill White if he did not put White behind bars. Welsh then struck White in the head with two pieces of wood connected by a chain.[3]

Later the same evening, Welsh went to the home of White's parents and threatened the entire family. Welsh suffered an injury as a result of this visit and had a criminal charge of assault brought against Mr. White. Counsel conducted Mr. White's defense and Mr. White was acquitted.

Counsel stated he had considered calling Jeffrey Miller and Mr. White as witnesses but they did not come to the trial. Counsel, however, neither subpoenaed them nor asked them to appear.

Finally, during the direct examination of the arresting officer, the State began laying a foundation for the admission into evidence of a statement made by appellant Box to the effect "they" had planned to pull the robbery but backed out and changed their minds. Prior to the admission of the statement, the trial court on its own initiative, called for a bench conference in which the court and the prosecutor discussed the possibility of a "*Bruton* problem."[4] Thereafter, the State withdrew the question and did not elicit further testimony as to the statement. During the bench conference counsel made only one comment and that was to the effect that the admission of the statement would cause him to put the appellants on the stand.

Later, on the direct examination of appellant Box, counsel asked him if he had a conversation with the officer that indicated he had thought about sticking up the place. Box stated he told the officer he had thought about doing something when he was eleven or twelve years old but had not gone through with it. The prosecutor immediately requested another bench conference and stated he felt entitled to call the officer and bring out the entire conversation. Counsel, in response, stated:

"Your Honor, I've got to apologize. I hadn't thought that deeply, and this just shows the fallacy that sometimes you think you know what you're doing, but I'll tell you, there have been so many inferences and innuendos in this case— everything—there's been nothing brought out that—I can't take any position except having the boys tell the story to the best of their ability, and if I've transgressed any areas which I think is detrimental to my clients, it will have to be shown, but I do know that at the time that you've discussed the fact that you wouldn't insist on the line of questioning coming from Detective Sergeant Jerald Schemenour, I said I would put them on the stand, and you would have a chance to ask your question. I even informed the Court of that, and that's all I was trying to do. I was probably trying to be courteous and a little bit more accomodating (sic) than I should be, and I apologize for it, because I have the highest respect for counsel and for this Court. This Court knows that. The only thing is, I did say at the outset that I would permit, and to be cross examined on this out-of-context remark."

We agree with appellants that these exchanges clearly show counsel was unaware of, and/or was unable to appreciate the existence and significance of the *Bruton* problem and the harm he was causing to appellants' defense.

While one of the foregoing errors may not alone constitute strong and convincing proof of inadequate legal representation, we must consider the totality of the circumstances surrounding counsel's actual conduct of the trial. Viewing the record in this light, we are forced to conclude that appellants were denied effective assistance of counsel.

Judgment reversed and cause remanded for a new trial.

BUCHANAN, C. J., and SULLIVAN, J., concur.

---

**3.** At the hearing on the motion to correct errors Welsh denied threatening or striking White. He maintained the confrontation was a verbal argument over property, allegedly stolen by White from Welsh.

**4.** *Bruton v. U.S.* (1968) 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476.