**Loren Earl WILKINS, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 3–181A13.

Court of Appeals of Indiana, Third District.

Sept. 28, 1981.

Rehearing Denied Nov. 13, 1981.

Harriette Bailey Conn, Public Defender, Ihor N. Boyko, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Carolyn M. Brawner, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Presiding Judge.

Petitioner Loren Earl Wilkins was convicted of first-degree burglary, and on March 3, 1977 he was sentenced to a prison term of not less than ten years and not more than twenty. On August 14, 1979 he filed a petition for post-conviction relief with the trial court. Following a hearing on the matter, the petition was denied and he appeals. Wilkins questions whether he was provided with incompetent trial counsel; whether the trial court committed fundamental error by giving State's Instruction No. 4 to the jury; and whether alleged prosecutorial misconduct denied him a fair trial.

Wilkins bases his claim that he was provided with incompetent counsel on three "errors." First, he argues that defense counsel failed to file a notice of alibi and thereby forfeited the right to call two alibi witnesses who were present at the trial. Second, that defense counsel did not object to remarks of the prosecutor during the State's final argument or to certain questions asked during trial regarding prior criminal activity of Wilkins. Third, that Wilkins' counsel neglected to object to the reading of State's Instruction No. 4.

In dealing with the issue of incompetent counsel, this Court begins with the presumption that the attorney for the defense has discharged his duty fully. Strong and convincing proof to the contrary is required to rebut that presumption. *Huggins v. State* (1980), Ind., 403 N.E.2d 332. A criminal conviction will not be charged to incompetent counsel unless it is shown that defense counsel's mistakes result in a trial that is a mockery of justice, shocking to the conscience of the reviewing court. *Hendrix*

*v. State* (1981), Ind., 418 N.E.2d 1161; *Herman v. State* (1979), Ind., 395 N.E.2d 249. The reviewing court looks to both quantitative and qualitative factors to determine if the petitioner received adequate legal representation. *Huggins, supra; Thomas v. State* (1969), 251 Ind. 546, 242 N.E.2d 919. Since this is an appeal from a denial of post-conviction relief, Wilkins must show this Court that the evidence taken as a whole leads unerringly and unmistakably to a decision completely inimical to that of the trial court. *Lagenour v. State* (1980), Ind., 414 N.E.2d 295.

Wilkins' first two points of defense counsel "error" here are that counsel failed to call alibi witnesses and that he neglected to object to questions and remarks of the prosecutor during trial and during the State's final argument. Defense counsel testified at the post-conviction hearing that he discarded the alibi defense only after investigation and a decision that such a defense would not be helpful to his client's cause. In addition, counsel stated that he did not object to the prosecutor's remarks regarding possible prior criminal activity of Wilkins because he did not want to make a point of the defendant's background in front of the jury. Certainly these were moves of strategy. Both this Court and the Indiana Supreme Court have repeatedly held that deliberate moves of strategy do not necessarily show incompetent counsel even though they may be criticized later or turn out to be detrimental to the defendant. *See, e. g., Morris v. State* (1980), Ind., 409 N.E.2d 608; *Roberts v. State* (1981), Ind. App., 419 N.E.2d 803. As a result, this Court holds that the trial court did not err in finding that these actions did not cause the trial to be a mockery of justice or shocking to the conscience.

Wilkins, however, further argues that his attorney was incompetent because he failed to object to State's Instruction No. 4. This particular instruction informed the members of the jury that if they believed State evidence showing Wilkins in possession of the stolen property soon after the burglary and Wilkins failed to explain that posses-sion to their satisfaction, then an inference would be raised that Wilkins was guilty of the burglary at issue. Prior to Wilkins' trial an almost identical instruction was held to be error in *Abel v. State* (1975), 165 Ind.App. 664, 333 N.E.2d 848. *See also, Arthur v. State* (1949), 227 Ind. 493, 86 N.E.2d 698; *Vaughn v. State* (1939), 215 Ind. 142, 19 N.E.2d 239; *Dedrick v. State* (1936), 210 Ind. 259, 2 N.E.2d 409. Wilkins contends that since the reading of the instruction was error and his counsel failed to object, his counsel was incompetent, citing *Smith v. State* (1979), Ind., 396 N.E.2d 898.

In *Smith*, defense counsel did not object when his client was brought to the trial dressed in a prison uniform. This happened six months after the United States Supreme Court held that a defendant's due process rights were violated when he was required to wear prison clothes at trial. *See, Estelle v. Williams* (1976), 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126. At the post-conviction hearing, the defense attorney in *Smith* stated that he had intended for his client to wear street clothes in order to give a "middle-class" appearance at trial. However, when his client instead appeared at trial in prison clothing, he chose not to object because he was under the impression that his objection would be futile and only serve to attract attention to the defendant because the matter of a defendant's apparel at trial was left to the discretion of the trial judge. *Smith, supra*, 396 N.E.2d at 900. On appeal, the Indiana Supreme Court held that the defense attorney's action fell short of adequate legal representation:

> "We do not hold that every time a defendant appears at trial in jail garb and his attorney fails to object that defendant has been denied the effective assistance of counsel. However, where, as here, it can be shown that trial counsel is *incapable of carrying out his trial strategy* on so fundamental a point because of ignorance of the law, that attorney has been ineffective in his assistance of the defendant." (Emphasis added.) 396 N.E.2d at 901.

 The holding in *Smith* is easily distinguishable from the case at hand and counsel's failure to object to Instruction No. 4 did not result in incompetent representation. Here defense counsel's failure to object to the instruction clearly was not a calculated move of trial strategy and was at worst a mistake. It has been held that although one isolated mistake does not necessarily amount to competent counsel, neither does it result in a determination that counsel was incompetent. 396 N.E.2d at 900. A reviewing court must look to the totality of the facts and circumstances to find whether the accused received competent representation. *Leaver v. State* (1981), Ind., 414 N.E.2d 959. In this case Wilkins was provided with a vigorous defense. Wilkins' attorney investigated the facts surrounding the case and discussed matters of trial strategy with the attorney for Wilkins' co-defendant. Wilkins' counsel studied the alibi as well as other defenses and testified at the post-conviction hearing that he spent an inordinate amount of time preparing the case because it was his first criminal jury trial. At trial, defense counsel filed a motion to separate Wilkins' trial from that of his co-defendant, cross-examined State witnesses, objected to State evidence, presented a witness who exonerated Wilkins and moved for a judgment on the evidence both at the close of the State's evidence and at the close of the defendant's case. A view of the totality of the facts and circumstances in this case does not reveal that Wilkins' trial was a mockery of justice or that he was incompetently represented.

The second issue presented here is whether the reading of State's Instruction No. 4 was fundamental error. Wilkins argues that this instruction violated his due process rights on several grounds. He cites *Underwood v. State* (1977), Ind.App., 367 N.E.2d 4 for the proposition that this instruction was fundamental error but candidly admits that *Underwood* has since been modified.

 This Court held in *Underwood* that giving an instruction very similar to the one at issue was fundamental error. A finding of fundamental error permits the reviewing court to consider the merits of an issue even though it is not properly preserved for appeal. *Winston v. State* (1975), 165 Ind.App. 369, 332 N.E.2d 229. On the other hand, where the giving of an instruction is not fundamental error any right to complain is waived by failure to object to the instruction at trial. *Jacks v. State* (1979), Ind., 394 N.E.2d 166.

 The *Underwood* decision was modified *sub silentio* in *Sansom; Murphy v. State* (1977), 267 Ind. 33, 366 N.E.2d 1171, overruled on other grounds by *Elmore et al. v. State* (1978), 269 Ind. 532, 382 N.E.2d 893. In *Sansom*, an instruction was read to the jury which was nearly identical to the instruction at issue here. There was no majority opinion in *Sansom* but all five justices agreed that no error was preserved for appeal where the instruction was not objected to at trial. More recently, this Court specifically held that the portion of *Underwood* holding the instruction to be fundamental error was superseded by *Sansom*. *Phillips v. State* (1978), Ind.App., 377 N.E.2d 666. Consistent with this line of authority, it is apparent that reading the instruction at issue here was not fundamental error. Since Wilkins did not object to the instruction at trial, any claim of error with regard to that instruction was waived.

Wilkins alternatively suggests that the propriety of State's Instruction No. 4 is reviewable in this post-conviction proceeding pursuant to *Henderson v. Kibbe* (1977) 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203. In that case the Supreme Court held:

"The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process' ... not merely whether 'the instruction is undesirable, erroneous, or even "universally condemned." ' " (Footnotes and citations omitted.) *Id.* at 154, 97 S.Ct. at 1736.

Certainly the burden described in *Henderson* is as difficult if not more difficult to meet than a showing of fundamental error. Fundamental error has been described as error that " 'pervades the climate of the proceedings below, viewed as a whole, depriving the defendant of any realistic opportunity for a fair hearing.' " *Garrett v. State* (1980), Ind., 413 N.E.2d 909, at 911 (quoting *Winston v. State, supra*, 332 N.E.2d at 232). It stands to reason, then, that if this instruction does not meet the standards of fundamental error, neither can it meet the burden described in *Henderson*.

■■■■ The last issue to be discussed is whether Wilkins was denied a fair trial due to alleged prosecutorial misconduct. Wilkins points out several comments made by the prosecutor which he maintains denied him a fair trial. The post-conviction court below found this issue waived because the defendant failed either to object to the comments during trial or to bring the issue of prosecutorial misconduct on direct appeal. The trial court decision here is a correct application of Indiana law.

Indiana Rules of Procedure, Post-Conviction Rule 1, Section 8 reads:

"All grounds for relief available to a petitioner under this rule must be raised in his original petition. Any ground finally adjudicated on the merits or not so raised and knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence, or in any other proceeding the petitioner has taken to secure relief, may not be the basis for a subsequent petition, unless the court finds a ground for relief asserted which *for sufficient reason* was not asserted or was inadequately raised in the original petition." (Emphasis added.)

This rule places a burden on the post-conviction petitioner to justify his omission of the alleged error from the original appeal. *See, Gurley v. State* (1980), Ind., 398 N.E.2d 1282; *Rinard v. State* (1979), Ind., 394 N.E.2d 160 (incompetent counsel not a mitigating factor to waiver of prosecutorial misconduct issue where Supreme Court found counsel to be competent). This bur-

den is in accord with the purpose of the post-conviction remedy which is to permit the petitioner to raise issues which were either unknown or unavailable to him in the original appeal. *Henderson v. State* (1979), Ind., 395 N.E.2d 224. Wilkins has made no attempt to explain the reason for omitting his prosecutorial misconduct claim from his direct appeal. Hence, the trial court correctly found the claim to be waived.

Affirmed.

GARRARD, J., concurs.

STATON, J., dissents with opinion.

STATON, Judge, dissenting.

I dissent.

Loren Earl Wilkins was denied the effective assistance of counsel.

The trial court committed reversible error when it gave Instruction No. 4, which provided:

"The exclusive possession of stolen property soon after a larceny or burglary has been committed, if not explained to the satisfaction of the jury, may raise an inference that the person in possession of such stolen property is guilty of the larceny or burglary charged. The inference of guilt does not arise from the mere possession of the property stolen, but arises from the fact of its possession shortly after it has been stolen, coupled with the absence of a satisfactory explanation, or of anything tending to show that such possession is or may be consistent with innocence. In this case, evidence has been presented by the State showing that certain goods allegedly taken by a burglary from the home of Darrell Schwartz, were in the possession of the defendants shortly after the alleged burglary. The defendants have offered evidence in their defense to explain such possession of the goods. The jury, in its deliberations, should consider the evidence offered both by the State and the defendant on this issue in the light of all the other evidence in the case, giving such credence to witnesses and such weight to the evidence as the jury believes is warranted."

Indiana case law antedating World War II has condemned the giving of similarly worded instructions. These cases have construed the "inference of guilt from possession" instruction as (1) impermissibly placing upon a defendant the burden of proving his or her innocence, (2) impermissibly commenting upon a defendant's exercise of the right to remain silent, and (3) impermissibly invading the province of the jury in its fact-finding function. Defense counsel was admittedly unaware of this long line of cases and thus failed to record an objection to the giving of Instruction No. 4. The absence of an objection closed the avenue of post-conviction relief which would have vindicated Wilkins' present claim of prejudicial error. I view defense counsel's failure to invoke the rules of law that would have sustained a challenge to a thoroughly repudiated instruction as an egregious error for which defense counsel and not Wilkins must be held responsible.

The importance of Instruction No. 4 to the State's case against Wilkins is underscored by the evidence adduced at trial. The State's evidence showed that police officers from Bradley, Illinois, stopped Wilkins and David Stoll for a motor vehicle violation. Wilkins was a passenger in the vehicle which was owned and operated by Stoll. A search of the passenger compartment and of the trunk of the vehicle uncovered what the police officers subsequently discovered to be items that had been stolen recently during the burglary of a house located in Elkhart County, Indiana. Two witnesses for the State testified that they saw two men stop in the driveway of the house on the day of the burglary. The witnesses stated that the two men carried several items from the house to their vehicle. Stoll was positively identified as one of the men at the house by one of the witnesses, but neither witness recollected seeing Wilkins at the house. A patrolman for the sheriff's department testified that the witness who made the in-court identification of Stoll also selected Stoll's picture from a pretrial photographic display. That same witness leafed through the other pictures and kept returning to Wilkins' picture. She

thought that Wilkins looked familiar but she was unable to positively identify him as one of the men at the house. Wilkins presented one witness, Stoll, who confessed to burglarizing the home. However, Stoll testified that Wilkins was not with him during the burglary. Stoll stated that he was assisted by another person. After returning to Illinois from the burglary, Stoll dropped off his accomplice and then met Wilkins. Stoll stated that Wilkins and he were driving to the grocery store when they were stopped by the Bradley police.

Wilkins was connected to the Elkhart County burglary only by an equivocal pretrial photographic identification by a witness who was unable to identify Wilkins at trial and by Wilkins' presence in the vehicle that contained the items stolen during the burglary. What inferences the jury could draw from the latter fact was of extreme importance. Even more important was the manner in which the jury should have been instructed on the law applicable to those facts. The instruction tendered by the State, accepted by defense counsel, and given by the trial court failed miserably in instructing the jury on the law applicable to the facts presented. A review of Indiana case law reveals the constitutional repugnancy of the instruction given by the trial court.

In *Dedrick v. State* (1936), 210 Ind. 259, 2 N.E.2d 409, the Supreme Court condemned the following instruction:

"'If the State of Indiana has proved that the property described in the affidavit was stolen, and that such property was, after the larceny, found in the exclusive possession of the defendant, then the law imposes upon him the burden of accounting for his possession and showing that such possession was innocently acquired, and if he fails to do so or gives a false account of his possession, the presumption arises that he has unlawfully acquired the possession of such property.'"

*Dedrick, supra*, 210 Ind. at 260, 2 N.E.2d at 411.

This instruction was given in response to the State's evidence that showed the defendant to have been in possession of a stolen automobile. This was the only evidence introduced by the State in support of a burglary charge. In finding the instruction defective, the Court stated:

"The objection to such an instruction lies, not in the omission to tell the jury whether it is a presumption of law or a presumption of fact, but the error consists in taking from the jury the right for them to determine whether or not the proof of such facts is sufficient to prove the defendant guilty beyond a reasonable doubt. It is the exclusive province of the jury to determine, from all the facts and circumstances in the case, the defendant's guilt or innocence, and any instruction by the court which in any manner takes from the jury this exclusive duty, or which attaches weight to certain evidence, or which would in any manner place the burden upon the defendant to prove his innocence or introduce evidence to create a reasonable doubt in the minds of the jury, is erroneous. It is the affirmative duty of the state in criminal cases to prove the defendant's guilt beyond a reasonable doubt. Such cases present questions of fact, and the jury alone must draw any inference which might be drawn from the evidence, and it is not for the court to say in such cases that the proof of certain facts or circumstances would, as a matter of law, create the presumption of guilt. . . ."

\* \* \* \* \* \*

"If the court has the right to give the instruction here in question, it would necessarily follow that in all cases where stolen property was recently found in the exclusive possession of the defendant, and unless the defendant explains his possession, or if he gives a false account of his possession, the court, under such circumstances, instead of giving the above instruction, should direct the jury to return a verdict of guilty, as such presumption, in the absence of evidence explaining such possession, would become absolute and the jury would have no alternative in the matter. If the defendant sees fit to not testify after the state has proven that the goods in question had been recently stolen, and soon thereafter found in his exclusive possession, he thereby runs the risk of the jury reaching the conclusion and drawing the inference that he is the thief. Such evidence, of course, is always competent, but under our Constitution the jury are the exclusive judges of the facts as well as the law in criminal cases, and the court has no right to attach any weight or presumption or inference to the evidence in the case."

\* \* \* \* \* \*

"Exclusive possession by the defendant of recently stolen goods is a circumstance to be considered by the jury, and, if the state proves that the goods in question have been recently stolen, and soon thereafter were found in the possession of defendant, and there is no evidence in the record explaining the possession of the defendant, and if the jury under proper instruction concludes that the defendant was guilty, such evidence would be sufficient to sustain the verdict of the jury upon appeal. We do not think that a court has any right or any power to instruct the jury that the proof of certain facts raises a presumption against the defendant in a criminal case, but the court should more properly instruct the jury that all facts and circumstances as shown by the evidence should be considered by them in determining the guilt or innocence of the defendant.

"Under the Constitution of Indiana (art. 1, § 19) the jury is the exclusive judge of the facts and the law and it is their province to say whether or not the proof in any given case proves the defendant guilty of the crime charged beyond a reasonable doubt."

*Dedrick, supra,* 210 Ind. at 272, 277, 278–79, 2 N.E.2d at 415–16, 418. The Supreme Court reaffirmed its disapproval of "inference of guilt from possession" instructions in *Vaughn v. State* (1939), 215 Ind. 142, 19 N.E.2d 239, and in *Arthur v. State* (1949),

227 Ind. 493, 86 N.E.2d 698, which involved instructions nearly identical to that rejected in *Dedrick*. The Court stated in *Arthur:*

"The above instruction takes from the jury the right to determine the facts and circumstances in the case as to appellant's guilt or innocence. Any instruction by the court which in any manner takes from the jury this exclusive duty, or which attaches weight to certain evidence, or which would in any manner place the burden upon the appellant to prove his innocence, or force him to introduce evidence to create a reasonable doubt in the minds of the jurors, is erroneous. It is the affirmative duty of the State in criminal cases to prove the defendant's guilt beyond a reasonable doubt, and this burden cannot be shifted at any time to the defendant.

"The instruction complained of presented questions of fact, and the jury alone must draw any inferences or presumptions which might be drawn from the evidence, and it is not for the court to say in such cases that proof of certain facts or circumstances would, as a matter of law, create the presumption of guilt. This court recognizes that whatever inference or presumption arises from unexplained possession of recently stolen property must be drawn by the jury and not by the court; that it is an inference or presumption of fact, and not an inference or presumption of law. The question must be submitted to the jury for its determination . . . ."

*Arthur, supra,* 227 Ind. at 497, 86 N.E.2d at 700.

It was not until 1971 when the Supreme Court made its first definitive statement upon a permissible "inference of guilt from possession" instruction. In *Gann v. State* (1971), 256 Ind. 429, 269 N.E.2d 381 (DeBruler, J., and Prentice, J., dissenting), a majority of the Court approved the following instruction:

"'The unexplained, exclusive possession of a defendant of recently stolen property is a circumstance which may be considered, along with the other facts and circumstances of the case, in determining the guilt or innocence of the accused. However, the mere possession of stolen goods, standing alone, is insufficient to support a conviction, and the defendant cannot be convicted on the basis of evidence of mere possession of stolen goods alone.

"'If you should find from the evidence, beyond a reasonable doubt, that a burglary was in fact committed on the premises involved in the case, and that within a short period of time thereafter the defendant himself or with others was found in the unexplained, exclusive possession of property identified by the evidence as that stolen from the burglarized premises, you may consider such circumstance in arriving at your verdict in this case. However, no presumption of guilt of burglary is made or arises against a defendant merely by reason of his exclusive possession of goods which have been unlawfully and burglariously taken within a short period of time beforehand, if such be the case. Proof of the commission of the offense must be made beyond a reasonable doubt by the State, and the defendant has no burden to account for or explain for his possession of the goods, but the burden of proving his guilt beyond a reasonable doubt rests entirely upon the State, and you would not be warranted in finding the defendant guilty unless all of the elements of the offense charged have been proved by the evidence, of whatever class it may be, beyond a reasonable doubt.'"

*Gann, supra,* 256 Ind. at 433, 269 N.E.2d at 383–84. The Court found that the *Gann* instruction correctly stated the law applicable to the facts of the case, i. e., that the "unexplained, exclusive possession of recently stolen property constitutes a circumstance from which a court or jury may draw an inference of guilt." *Gann, supra,* 256 Ind. at 432, 269 N.E.2d at 383, *quoting, Lawrence v. State* (1963), 244 Ind. 305, 312, 192 N.E.2d 629, 632. In addition to correctly stating applicable law, the *Gann* instruction "explains to the jurors that they cannot find the defendant guilty solely on the

basis of his possession of stolen goods and that the burden of proving his guilt beyond a reasonable doubt always rests upon the State." *Gann, supra,* 256 Ind. at 434, 269 N.E.2d at 384. Such instructional exhortations were lacking in "inference of guilt from possession" instructions disapproved by the Court on other occasions.

Four years after *Gann* was decided, the Court of Appeals struck down an "inference of guilt from possession" instruction which the court distinguished from the one approved in *Gann.* In *Abel v. State* (1975), 165 Ind.App. 664, 333 N.E.2d 848, the following instruction was given in response to the State's evidence that showed the defendant to have been in possession of a recently stolen automobile:

> " 'The exclusive possession of stolen property soon after a theft or burglary has been committed, if not explained to the satisfaction of the jury, may raise an inference that the person in possession of such stolen property is guilty of the theft or burglary charged. The inference of guilt does not arise from the mere possession of the property stolen, but arises from the fact of its possession shortly after it has been stolen, coupled with the absence of a satisfactory explanation or of anything tending to show that such possession is or may be consistent with innocence. In this case, evidence has been presented by the State showing that a certain automobile allegedly taken by a theft from Noeleana Pierce, was in the possession of the defendant shortly after the alleged theft. The jury, in its deliberations, should consider the evidence offered by the State in the light of all the other evidence in the case, giving such credence to witnesses and such weight to the evidence as the jury believes is warranted.' "

*Abel, supra,* 165 Ind.App. at 671, 333 N.E.2d at 852. [I note at this juncture that the language of the *Abel* instruction is nearly identical to Instruction No. 4 of the present case. Differences exist only in the name of the parties involved and the particular facts of the offenses charged.] Relying upon *Dedrick* and *Arthur* and distinguishing *Gann,*

the court in *Abel* held the instruction to be an impermissible comment upon the defendant's failure to testify. The court observed:

> "A comparison of the instruction approved by the court in *Gann* with the instruction given to the jury in the case at bar shows that reversible error was committed by the trial court when it gave the said instruction. The language in the instruction that said that an inference of guilt may arise from possession of the goods 'coupled with the absence of a satisfactory explanation' should be construed as nothing more than a comment on defendant's failure to testify, and such comment by the court is strictly forbidden if the defendant properly voices his objection. *Gross v. State* (1974), [261 Ind. 489,] 306 N.E.2d 371. The objection was made and the error properly preserved in the case at bar."

*Abel, supra,* 165 Ind.App. at 676, 333 N.E.2d at 855.

This survey of Indiana law on "inference of guilt from possession" instructions reflects the body of law that existed on the subject as of the date of Wilkins' trial, which was February 22, 1977. Cases decided after Wilkins' trial reaffirmed the aversion of Indiana courts toward loosely worded "inference of guilt from possession" instructions. In *Underwood v. State* (1977), Ind.App., 367 N.E.2d 4, the Court of Appeals, First District, found the giving of an instruction similar to that rejected in *Abel, supra,* to be fundamental error. The court determined that the defendant's failure to preserve the error for appellate review by objecting to the instruction did not preclude the court from granting relief. The court observed:

> "The instruction in the case at bar authorized the jury to convict the defendant upon proof by the State that he was in possession of recently stolen property, absent evidence being presented by the defendant justifying his possession thereof. The effect of the instruction was to squarely place upon the defendant the burden of convincing the jury of his innocence and thereby undermining the fun-

damental rule of criminal law that the State throughout the course of a criminal trial bears the burden of proving the defendant guilty of each element of the crime of which he is charged beyond a reasonable doubt. Fundamental due process of law does not permit this burden to be shifted to the defendant." *Underwood, supra,* 367 N.E.2d at 5.

Nine days after *Underwood* was decided, the Supreme Court, in a rather disjointed collection of three concurring opinions, determined that any error occurring in the giving of an "inference of guilt from possession" instruction could not be preserved for appellate review in the absence of a timely objection to the instruction. *Sansom v. State* (1977), 267 Ind. 33, 366 N.E.2d 1171, *overruled on other grounds, Elmore v. State* (1978), 269 Ind. 532, 540, 382 N.E.2d 893, 898. The effect of *Sansom* was to bring a quick death to the young life of the fundamental error holding in *Underwood,* although *Underwood* was not expressly overruled by name in *Sansom. Sansom* cannot be read as a tacit approval of the challenged instruction. Rather, the Court refused to address the propriety of the instruction because the issue was not preserved for appeal.

After *Sansom* was decided the Court of Appeals adhered to the long line of cases striking down improperly worded "inference of guilt from possession" instructions. In *Phillips v. State* (1978), Ind.App., 377 N.E.2d 666 (Buchanan, C. J., dissenting), the court once again rejected the instruction that had been disapproved in *Abel* and *Underwood.* The court distinguished the *Gann* instruction and discussed the limited holding of *Sansom,* as has been done in this opinion. The dissent dismissed the difference between the *Phillips* instruction and the *Gann* instruction as "a finespun variance in the language" and questioned the validity of *Abel* and *Underwood* since transfer had not been sought in either case. *Phillips, supra,* 377 N.E.2d at 670.

The most recent comment upon the propriety of the "inference of guilt from possession" instruction has come from Justice Pivarnik in his opinion dissenting to the denial of transfer of *Carter v. State,* No. 3–677–A–149, handed down January 22, 1979, as an unpublished opinion of this Court. Justice Pivarnik's dissent appears at *Carter v. State* (1979), Ind., 392 N.E.2d 448. Citing Chief Judge Buchanan's dissent in *Phillips, supra,* Justice Pivarnik contended that transfer should have been granted in *Carter,* in which this Court unanimously reversed a theft conviction on the basis of the giving of the instruction that had been condemned in *Abel, Underwood,* and *Phillips.* The dissent asserted that the cases relied upon by this Court were in contravention to the Supreme Court's holding in *Gann* and *Sansom.*

I have set forth the notorious history of the "inference of guilt from possession" instruction in Indiana law to demonstrate that it has been the subject of extensive criticism for several decades. As *Gann* demonstrates, the wording of such an instruction is of critical importance. The instruction has been struck down through the years for several reasons: (1) jurors may construe the instruction as shifting the burden of proof upon the defendant; (2) the instruction makes an impermissible comment upon the defendant's right to remain silent; and (3) the instruction invades the province of the jurors' fact-finding function by having the trial court identify specific evidence from which a particular inference should be drawn. Instruction No. 4 appears to suffer from all three defects. Yet, defense counsel failed to assert any of these defects at trial because he was unaware of the cases that rejected instructions with defects similar to those of Instruction No. 4.

The particular defects of Instruction No. 4 should be discussed. Unlike the instruction approved in *Gann, supra,* Instruction No. 4 did not explain to the jurors that the burden of proving Wilkins' guilt beyond a reasonable doubt was borne always by the State. Jurors could have construed the instruction as requiring Wilkins to "explain" his possession of the stolen items (assuming he had possession of the items since they were found in the vehicle owned and oper-

ated by another person). The instruction provides no guidance in advising the jury as to which party bears the burden of proving the lack of a reasonable explanation for the possession of the stolen items. The phrases "if not explained to the satisfaction of the jury" and "coupled with the absence of a satisfactory explanation" leaves jurors to speculate as to who must do the explaining and as to who must prove a lack of a reasonable explanation. I doubt seriously that the defendant must bear the burden of explaining possession for the Indiana Supreme Court has stated:

> "In criminal cases the entire burden is upon the state from the beginning, and the accused is not bound to explain anything, and his failure to do so cannot be considered as a circumstance tending to prove his guilt."

*Parker v. State* (1894), 136 Ind. 284, 292, 35 N.E.2d 1105, 1108.

One scholar has posited that the only time the drawing of an inference from a lack of a satisfactory explanation is appropriate is when the State proves the underlying fact, such as possession of stolen items, *in addition to* proving that there is no satisfactory explanation for possession:

> "If there is affirmative evidence on the basis of which the jury can conclude that there is no innocent explanation for the suggestive predicate fact, then a verdict would be warranted beyond a reasonable doubt. * * * The essential point is that the lack of a satisfactory explanation has been demonstrated by the prosecution as part of its case, and not by shifting a burden to the defendant. . . ."

Nesson, "Reasonable Doubt and Permissive Inferences: The Value of Complexity," 92 *Harv.L.Rev.* 1187, 1213–14 (1979). An "inference of guilt from possession" instruction may not be used as a weapon by the State so as to require the defendant to prove his or her innocence of the offense charged.

As a corollary to the tendency of an "inference of guilt from possession" instruction to mislead jurors into believing that the defendant bears the burden of proving innocence, the instruction has been construed as an impermissible comment upon the defendant's refusal to testify by exercising the constitutional right to remain silent. If jurors construed the instruction as requiring the defendant to explain the possession of stolen items and the defendant exercised the right to remain silent, jurors could speculate that the instruction was saying that the defendant's silence was tantamount to an unsatisfactory explanation. The infirmities in an instruction with such an effect are evident. The Indiana Constitution, Article 1, § 14, provides in pertinent part: "No person, in any criminal prosecution, shall be compelled to testify against himself." Comment upon a defendant's refusal to testify was strictly forbidden also by statute:

> "The following persons are competent witnesses:
>
> \* \* \* \* \* \*
>
> "Fourth. The defendant, to testify in his own behalf. But if the defendant do [*sic*] not testify, his failure to do so shall not be commented upon or referred to in the argument of the cause, nor commented upon, referred to, or in any manner considered by the jury trying the same; and it shall be the duty of the court, in such case, in its charge, to instruct the jury as to their duty under the provisions of this section."

IC 1976, 35–1–31–3 (Burns Code Ed., 1979 Repl.) (repealed 1981). In discussing the guarantee of the Fifth Amendment of the United States Constitution that no person "shall be compelled in any criminal case to be a witness against himself," the United States Supreme Court observed:

> "The freedom of a defendant in a criminal trial to remain silent 'unless he chooses to speak in the unfettered exercise of his own free will' is guaranteed by the Fifth Amendment and made applicable to state criminal proceedings through the Fourteenth . . . And the Constitution further guarantees that no adverse inferences are to be drawn from the exercise of that privilege . . . Just as adverse comment on a defendant's silence 'cuts

down on the privilege by making its assertion costly,' . . . the failure to limit the jurors' speculation on the meaning of that silence when the defendant makes a timely request that a prophylactic instruction be given, exacts an impermissible toll on the full and free exercise of the privilege. Accordingly, we hold that a state trial judge has the constitutional obligation, upon proper request, to minimize the danger that the jury will give evidentiary weight to a defendant's failure to testify." (citations omitted)

*Carter v. Kentucky* (1981), 450 U.S. 288, 305, 101 S.Ct. 1112, 1121–22, 67 L.Ed.2d 241, 254. In condemning instructions that invite jurors to speculate about a defendant's failure to testify, the Indiana Supreme Court recently stated:

"The evil to be avoided is the drawing of the jurors' attention to the defendant's failure to testify. When the defendant has made the judgment that the instruction has this undesired effect, the court is obligated to protect the defendant's privilege against self-incrimination by omitting the instruction."

*Lee v. State* (1981), Ind., 424 N.E.2d 1011 at 1013. It is evident that any "inference of guilt from possession" instruction that leads jurors to speculate about a defendant's failure to take the witness stand and explain the possession of stolen items would be violative of all the authorities just cited.

Another defect that may exist in Instruction No. 4 is its impermissible comment by the trial court upon particular evidence adduced at trial. The persuasive argument articulated in *Sansom, supra,* by Justice Prentice and Justice DeBruler is on point:

"The inference, if any, to be drawn from a finding that the defendants were in possession of the stolen property lies in the exclusive province of the jury. As such, it is a matter for legitimate argument of counsel. Unquestionably, in most cases, such possession will logically weigh heavily, but its weight, nevertheless, will vary as the other evidence varies. An instruction as to what evidence warrants an inference of guilt clearly invades the jury's province. . . .

"For the Court to point out specific evidence and to advise as to the inferences properly to be drawn or not to be drawn therefrom is as much a transgression as it is for it to intimate its evaluation of a particular witness' credibility. This we have recently held to be erroneous in *Turner v. State* (1972), 258 Ind. 267, 280 N.E.2d 621; *Cherry v. State* (1972), 258 Ind. 298, 280 N.E.2d 818; *Taylor v. State* (1972), 257 Ind. 664, 278 N.E.2d 273."

*Sansom, supra,* 267 Ind. at 38–39, 366 N.E.2d at 1173–74.

None of the defects in Instruction No. 4 were asserted on behalf of Wilkins by defense counsel. The following colloquy from the transcript of the PCR hearing evinces the reason for defense counsel's failure to invoke those cases designed to protect Wilkins' rights:

"Q. Do you recall State's instruction No. 4 dealing with the inferences which may be drawn from possession of recently stolen property?

"A. No, I don't recall it.

"Q. Would you like to refresh your memory?

"A. Sure.

"Q. (Tendered)

"A. (Indicating)
 I have examined it. The transcript just fell apart.

"Q. Were you aware at that time that there were several cases holding that such an instruction is improper and prejudicial to the defendant?

"A. I don't believe I knew there were several cases holding that at that time. I'll elaborate on that if you like or not, whichever you like.

"Q. Well, you may elaborate is [*sic*] you wish.

"A. Okay. Basically, what happened in this situation is that I recall—this is one of the instructions that was objected to. I did not, I'm sure I did not at the time of my objection tell the Court that there were cases holding that this was an improper instruction because I

didn't know that, that those cases had been decided...."

Record at 569–70. Defense counsel's assertion that he objected to Instruction No. 4 is not substantiated by the record of Wilkins' trial. When the reason for the absence of an objection is considered in light of the Supreme Court's holding in *Smith v. State* (1979), Ind., 396 N.E.2d 898, I am compelled to conclude that Wilkins was denied the effective assistance of counsel.

In *Smith, supra,* the Supreme Court held that the petitioner was deprived of the effective assistance of counsel because defense counsel was incapable of carrying out trial strategy on a fundamental point of constitutional law due to defense counsel's ignorance of applicable law. Defense counsel *failed to object* to having the defendant brought before the jury while the defendant was wearing jail clothes. A United States Supreme Court case decided over six months before the *Smith* trial held that requiring a defendant to appear in jail clothes before a jury was impermissible. *See, Estelle v. Williams* (1976), 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126. In finding defense counsel's *failure to object* as a basis for concluding Smith did not receive the effective assistance of counsel, the Indiana Supreme Court observed:

"Petitioner's appearance in jail clothes had a pervasive influence on the trial. His trial counsel's inability to cope with the situation as per plan reflects a lack of adequate preparation regarding the rules of law favorable to defendant.

'And mere perfunctory action by an attorney assuming to represent one accused of crime which falls short of presenting the evidence favorable to him and invoking the rules of law intended to prevent conviction for an offense of which the accused is innocent or the imposition of a penalty more severe than is deserved, should not be tolerated.' *Hillman v. State,* (1954), 234 Ind. 27–33–4, 123 N.E.2d 180, 182; *Wilson v. State* (1943) 222 Ind. 63, 81, 51 N.E.2d 848, 855; *Castro v. State,* (1925) 196 Ind. 385, 391, 147 N.E. 321, 323.

"Although decided under a standard of 'reasonably competent' representation, we note with approval the following language of the United States Court of Appeals, District of Columbia Circuit:

'This court does not sit to second guess strategic and tactical choices made by trial counsel. However, when counsel's choices are uninformed because of inadequate preparation, a defendant is denied the effective assistance of counsel.' *United States v. DeCoster* (1973) 159 U.S.App.D.C. 326, 330, 487 F.2d 1197, 1201.

"Petitioner's trial counsel's performance at trial fell short of the adequate legal representation required in *Thomas v. State* [(1969), 251 Ind. 546, 242 N.E.2d 919]. We find that petitioner was denied the effective assistance of counsel required by the Sixth Amendment to the United States Constitution."

*Smith, supra,* 396 N.E.2d at 901. The principle of law enunciated in *Smith* was reiterated by the Court in *Huggins v. State* (1980), Ind., 403 N.E.2d 332, 334:

"[W]hen it can be shown that trial counsel failed to act because he was admittedly ignorant of the existing law, then a defendant has been denied the effective assistance of counsel...."

This principle resulted in a finding of ineffective assistance of counsel in *White v. State* (1981), Ind.App., 414 N.E.2d 973, wherein defense counsel's unawareness of a *Bruton* problem (*Bruton v. United States* (1968), 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476), among other things, led to the defendant's deprivation of adequate legal representation.

In the present case, defense counsel did not invoke the long line of cases that had ruled instructions similar to Instruction No. 4 impermissible. The *Abel* case, decided two years before Wilkins' trial, was on point in rejecting an instruction that had no substantive differences with Instruction No. 4. Yet, no objection was made.

The trial strategy of defense counsel was to show that there was insufficient evidence

connecting Wilkins with the burglary. First, there was no positive identification of Wilkins as one of the burglars. Second, Wilkins presented an alibi defense through Stoll, who completely exculpated Wilkins from any wrongdoing. In proving its case, the State relied upon an equivocal picture identification of Wilkins by a witness who could not identify him at trial and on Wilkins' presence in the vehicle that contained the stolen items. Any instruction upon the evidence showing Wilkins' presence in the vehicle should have alerted defense counsel to its propriety under the circumstances of the case. A modicum of research would have revealed the egregious errors contained in the instruction tendered by the State. Defense counsel's perfunctory acceptance of the tendered instruction, however, seriously jeopardized Wilkins' right to a fair trial.

In light of the critical importance of the evidence at which Instruction No. 4 was directed, defense counsel's failure to object to the serious misstatements of law contained in Instruction No. 4 constituted the ineffective assistance of counsel. *See, Corsa v. Anderson* (E.D.Mich.1977), 443 F.Supp. 176, 178. Defendants in criminal proceedings "are entitled to the effective assistance of counsel" acting "within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson* (1970), 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763, 773. Wilkins did not receive this assistance.

I emphasize that I am not labelling defense counsel as an "incompetent attorney." He performed most of the rudiments of a criminal trial "within the range of competence demanded of attorneys in criminal cases." However, defense counsel committed a serious error that cannot be readily dismissed as misplaced trial strategy, mistaken carelessness, or inexperience. The magnitude of prejudice attained by the error permeated the entire trial and jeopardized Wilkins' right to a fair trial. The egregious error is waived on appeal because defense counsel failed to lodge a simple objection to the instruction. It makes a "mockery of justice" and it "shocks the conscience" that the burden of defense counsel's flagrant omission must fall upon Wilkins rather than affording him a new trial at which the error will not be repeated.